666 A.2d 146

ROBIN BRILL, PLAINTIFF–RESPONDENT, v. THE GUARDIAN
LIFE INSURANCE COMPANY OF AMERICA, A CORPORA-
TION OF THE STATE OF NEW YORK, DEFENDANT, AND
KRA INSURANCE AGENCY, INC., A CORPORATION OF THE
STATE OF NEW JERSEY, AND CHARLES R. GOULD, DEFEN-
DANTS–APPELLANTS.

Argued May 2, 1995—Decided October 24, 1995.

522

*Marc L. Dembling* argued the cause for appellants (*Berlin, Kaplan, Dembling & Burke,* attorneys).

*Robert Novack* argued the cause for respondent (*Budd Larner Gross Rosenbaum Greenberg & Sade,* attorneys; *Mr. Novack* and *Mary L. Moore,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This appeal involves a claim of negligence against a life-insurance broker and his agency for failing to advise a prospective insured of the possibility of securing immediate, temporary coverage upon completion of the application process. The trial court granted summary judgment holding the broker and his agency liable for the face value of the policy. The important question raised is whether the trial court incorrectly granted a summary judgment motion in favor of the insured. A subset of that question is whether the trial court engaged in an impermissible weighing of evidence to determine whether a genuine issue of material fact existed.

We hold that when deciding a motion for summary judgment under *Rule* 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. This assessment of the evidence is to be conducted in the same manner as that required under *Rule* 4:37–2(b).

I

Because the case was disposed of in a summary judgment proceeding, our statement of the facts is based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment. *Dairy Stores, Inc. v. Sentinel Publishing Co., Inc.,* 104 *N.J.* 125, 135, 516 *A.*2d 220 (1986);

*Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954).

In June 1989, Robert Brill, thirty-seven years old at the time with a wife and two minor children, decided his $10,000 in life insurance with Prudential was inadequate. He contacted his broker, Charles Gould, of the KRA Insurance Agency, Inc. (KRA), to purchase an additional $750,000 in term-life insurance.

Gould met with Brill on June 15, 1989, at Brill's office. Brill told Gould that he wanted a $750,000 term policy as soon as possible. Gould explained that a three-step process had to be completed before securing a policy: 1) completing and signing an application, 2) undergoing a medical examination and 3) giving a "binder check." Gould explained that the process would require about four to six weeks to complete an underwriting review before a policy would be issued by Guardian Life Insurance Co. (Guardian).

Gould read the application questions to Brill and recorded Brill's responses. Brill informed Gould that he had been treated for chronic stomach problems that were believed to have been caused by an ulcer. Brill expressed some concern that Guardian would issue him a rated policy (one surcharged with an additional premium). Gould's response was that Guardian would conduct its own medical investigation into Brill's health, and if a rated policy was issued "we'll deal with it then." Brill signed the application after Gould recorded the information.

At or about the time of completion of the application, Gould asked for a deposit. Brill, however, was unwilling to give money to the insurance company before he knew a standard policy would be issued.

The application stated that Brill's policy would become effective upon delivery of the policy to the named insured. The application also contained a provision for coverage prior to delivery of the policy. Paragraph Eleven of the application provided:

I ... further agree that no insurance shall take effect (except as provided in the Conditional Receipt if an advance payment has been made and acknowledged above and such Receipt issued) unless and until the Policy has been delivered to and accepted by me ... and the first premium paid during the lifetime and prior to any change in health of the Proposed Insured as described in this Application.

However, Gould never advised Brill that he could obtain coverage virtually immediately in the form of a conditional receipt. Under the conditional-receipt concept, Brill would have been required to pass a medical examination conducted on behalf of Guardian. Passing the medical examination would have satisfied the requirement of being "acceptable as a standard risk." In addition, Brill would have been required to pay one-sixth of his annual premium for a standard policy, amounting to $141.87, upon signing the application.

Coverage under the conditional receipt would have existed for sixty days from the date of Guardian's medical examination. Conditional-receipt coverage would have (1) provided $500,000 in life insurance, (2) protected against any change in health requirement and (3) guaranteed that a standard policy, rather than a rated policy, would be issued in the amount of $750,000.

Gould also recorded the incorrect answer to a crucial question in the application that made Brill ineligible for a conditional receipt. Question 6(b) asked: "Have you, within the last 12 months ... had an electrocardiogram because of chest pain or any other physical problem or taken medication for elevated blood pressure?" Gould answered "yes" to that question because Brill said that he had undergone an electrocardiogram in preparation for knee surgery that was performed in June 1988. Gould, however, failed to question Brill concerning the date and purpose of those procedures. Had he done so, he would have learned that the electrocardiogram was performed on May 31, 1988, and the surgery on June 6, 1988. Because both procedures were more than twelve months before the date of the application, and because the electrocardiogram was not related to chest pain, the answer to Question 6(b) should have been "no."

On June 19, 1989, four days after Brill completed his application, Dr. Mary Mazzarella performed a medical examination of Brill on behalf of Guardian. Dr. Mazzarella did not discover any health problems.

On June 28, 1989, Gould mailed Brill's completed application to Guardian's general agent. The agent then forwarded the application to Guardian for processing. As a supplement to Dr. Mazzarella's report, Guardian obtained a statement from Brill's personal physician, Dr. Jonathon Shapiro. Guardian's records reflect that Dr. Shapiro saw Brill in May 1989 for abdominal pain and bowel spasms, and that Dr. Shapiro made "no findings" at that time.

On July 21, 1989, Guardian issued a $750,000 standard life-insurance policy with Brill as the named insured. Brill's wife, plaintiff Robin Brill, was the primary beneficiary. After Guardian issued the policy, it was forwarded to Gould who was to deliver it to Brill. However, when Gould called Brill's office to set up a time for delivery, he was told that Brill was out of the office and would not return until August 20.

The parties agree that if Brill had obtained a conditional receipt, any change in Brill's health after June 19, 1989, the date Dr. Mazzarella examined him, would have been immaterial to the question of coverage under the standard policy.

On July 24, 1989, prior to delivery of Guardian's policy, Brill underwent a transverse colon resection and a liver biopsy. Brill was diagnosed post-operatively with colon cancer and "metastatic poorly differentiated carcinoma" of the liver.

On August 25, 1989, Gould delivered the Guardian policy to Brill and collected the first premium. Brill did not advise Gould that he had been diagnosed with and treated for cancer. Nor did Gould ask Brill whether he had undergone any change in health since the time of his June 15, 1989, application.

On June 29, 1990, Brill died of metastatic cancer of the liver and carcinoma of the colon. Shortly thereafter, Gould notified Guardian's general agent of Brill's death and submitted a claim on behalf

of plaintiff. Guardian denied the claim on the grounds that Brill's policy was "null and void as of its effective date" because of the "change in health" experienced by Brill between the date of his application and receipt of the policy on August 25, 1989.

Following the denial of the claim for payment under the policy, plaintiff instituted the present litigation to compel payment of the face value of the policy. She alleged breach of contract, bad faith and breach of fiduciary duty against Guardian. She also alleged negligence and breach of fiduciary duty against KRA, Guardian's authorized agent, and Gould individually as agent for KRA. The theory of negligence against Gould was based on his failure to record the correct answer to Question 6(b) and the failure to discuss a conditional receipt with Brill.

On May 28, 1993, the trial court granted summary judgment in favor of Guardian. The court reasoned that as a matter of law, the policy was null and void because Brill had failed to advise Guardian of an "egregious and monumental" change in his health that occurred between the date of his application and the date of delivery of the policy.

On the same date, the trial court also granted plaintiff's motion for summary judgment against Gould and KRA in the amount of $750,000. The court reasoned that it was "beyond dispute" that Gould incorrectly recorded the answer to Question 6(b) on Brill's application, thereby causing Brill to become ineligible for the conditional-receipt coverage that would have rendered moot the change-in-health feature of the policy. The court further stated: "It is beyond dispute, and no jury can find otherwise that Mr. Gould did not even tell Mr. Brill that the option was available to him." The court concluded:

> Through Gould's negligence, which is inescapable, Mr. Brill was denied the option to be bound in such a manner that the change in health feature of the policy would be moot. Had Mr. Gould not so behaved, Mr. Brill would have been bound over for five hundred thousand dollars until August 25 [1989]. It would have become seven hundred and fifty thousand dollars.

KRA and Gould appealed and the Appellate Division affirmed in an unreported opinion substantially for the reasons articulated by

the trial court. We granted KRA's and Gould's petition for certification. 139 *N.J.* 288, 654 *A.*2d 469 (1994). We now affirm.

## II

Defendants KRA and Gould argue that the grant of summary judgment against them was improper because the trial judge engaged in an improper "weighing of the facts" and "refused to consider the reasonable inferences to be drawn in favor of the defendant broker." They contend that the evidence presents two genuine issues of material fact: (1) whether Gould deviated from the standard of care required of insurance brokers; and (2) whether his alleged deviation from that standard of care was a proximate cause of damage to plaintiff.

They contend Gould was not negligent based on the opinion of their expert, insurance broker Armando Castellini, who concluded that "Gould and KRA did not breach any duty owed to Brill, and that the agent and agency did not fail to conform to generally accepted standards and practices in the industry." They argue that with respect to the issue of proximate cause, the facts justify an inference that even if Gould had discussed the conditional-receipt option with Brill, he would not have elected that option because "he was never going to give any deposit premium unless and until he had a non-rated policy in his hands."

They also contend that Brill learned of the conditional-receipt option when he reviewed the application before signing it and that this fact supports an inference of no negligence on the part of Gould, or, at the very least, creates an issue of comparative negligence requiring submission of the case to a jury. See *Dancy v. Popp*, 114 *N.J.* 570, 573, 556 *A.*2d 312 (1989).

## III

### A

*Rule* 4:46–2 provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

The federal summary judgment rule, the counterpart to *Rule* 4:46, provides:

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

*[Fed.R.Civ.P.* 56(c).]

By its plain language, *Rule* 4:46–2 dictates that a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a "genuine issue as to any material fact challenged." That means a non-moving party cannot defeat a motion for summary judgment merely by pointing to *any* fact in dispute.

■ Forty-one years ago, this Court recognized that

if the opposing party [in a summary judgment motion] offers ... only facts which are immaterial or of an insubstantial nature, a mere scintilla, "fanciful, frivolous, gauzy or merely suspicious," he will not be heard to complain if the court grants summary judgment, taking as true the statement of uncontradicted facts in the papers relied upon by the moving party, such papers themselves not otherwise showing the existence of an issue of material fact.

*[Judson, supra,* 17 *N.J.* at 75, 110 *A.2d* 24 (citations omitted).]

In other words, where the party opposing summary judgment points only to disputed issues of fact that are "of an insubstantial nature," the proper disposition is summary judgment. *Ibid.* "Substantial" means "[h]aving substance; not imaginary, unreal, or apparent only; true, solid, real," *The Compact Oxford English Dictionary* 1947 (2d ed.1993), or, "having real existence, not imaginary[;] firmly based, a substantial argument." *The New Lexicon Webster's Dictionary of the English Language* 987 (1987).

See *Manalapan Realty, L.P. v. Township Committee Tp. of Manalapan,* 140 *N.J.* 366, 384, 658 *A.*2d 1230 (1995) (holding that a requirement of being substantially consistent with a master plan does not mean one hundred percent consistency).

Recently, we emphasized:

[Summary judgment] is designed to provide a prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at trial.

[*Ledley v. William Penn Life Ins. Co.,* 138 *N.J.* 627, 641–42, 651 *A.*2d 92 (1995) (quoting *Judson, supra,* 17 *N.J.* at 74, 110 *A.*2d 24).]

## B

Today, we focus on how to determine when an alleged disputed issue of fact should be considered "genuine" for purposes of *Rule* 4:46–2 and when such an issue should be considered "of an insubstantial nature." While "genuine" issues of material fact preclude the granting of summary judgment, *R.* 4:46–2, those that are "of an insubstantial nature" do not. *Judson, supra,* 17 *N.J.* at 75, 110 *A.*2d 24.

After early debate about the breadth of the summary judgment power, the jurisprudence of summary judgment was rather uniform until 1986. *See* Jeffrey W. Stempel, *A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Adjudication Process,* 49 *Ohio St. L.J.* 95, 133–44 (1988) (containing discussion of history of summary judgment practice). In that year the United States Supreme Court upheld summary judgments in three cases: *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 *U.S.* 574, 106 *S.Ct.* 1348, 89 *L.Ed.*2d 538 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 106 *S.Ct.* 2505, 91 *L.Ed.*2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 *U.S.* 317, 106 *S.Ct.* 2548, 91 *L.Ed.*2d 265 (1986). *Matsushita* was decided in March whereas *Liberty Lobby* and *Celotex* were decided the same day in June. The fact that the Court addressed the summary judgment standard three times within four months suggests how significant the issue had become.

*Matsushita* involved an antitrust case in which American electronics manufacturers claimed Japanese manufacturers had conspired to keep prices for their goods high in Japan to finance predatory pricing policies for goods exported to the United States. 475 *U.S.* at 577–78, 106 *S.Ct.* at 1351, 89 *L.Ed.*2d at 546–47. The plaintiffs alleged that the Japanese manufacturers flooded the American market with television sets and similar products at very low prices calculated to drive the American competition out of the market. *Ibid.* The American manufacturers contended that over the long term the conspiracy would enable the Japanese manufacturers to increase their market share and control the market eventually. *Id.* at 584, 106 *S.Ct.* at 1354–55, 89 *L.Ed.*2d at 550–51.

In *Matsushita,* all of the evidence to support the claim was circumstantial. The Court concluded that the basis of the plaintiff's claim was inherently implausible because no reasonable group of manufacturers would accept certain short-term losses in a market to gain only the speculative opportunity of long-term gains. *Id.* at 588–91, 106 *S.Ct.* at 1357–58, 89 *L.Ed.*2d at 553–55. The Court observed that to recoup their losses, the Japanese would have to achieve successfully the monopoly power to set higher prices and then sustain those prices long enough to offset the earlier losses. *Id.* at 590–91, 106 *S.Ct.* at 1358, 89 *L.Ed.*2d at 555. The Court concluded that the claim was inherently implausible. *Ibid.*

The majority in *Matsushita* claimed that no new standard was applied to summary judgment motions when it concluded that the judge should determine "the range of permissible conclusions that might be drawn" from the evidence in determining whether " 'a genuine issue for trial' exists within the meaning of *Rule* 56(e)." *Id.* at 596, 106 *S.Ct.* at 1361, 89 *L.Ed.*2d at 558.

*Liberty Lobby* involved a libel suit filed by a lobbying corporation and its founder against Jack Anderson, the publisher of a magazine, as well as against the magazine's president-chief executive officer, and the magazine itself, alleging they had libelled plaintiffs. 477 *U.S.* at 244–45, 106 *S.Ct.* at 2508, 91 *L.Ed.*2d at 209.

The claim was based on three articles published in the magazine that portrayed plaintiffs as neo-Nazi, anti-Semitic, racist and fascist. *Ibid.* After completing discovery, defendants moved for summary judgment pursuant to *Federal Rule of Civil Procedure* 56(c). *Id.* at 245, 106 *S.Ct.* at 2508, 91 *L.Ed.*2d at 209–10.

In a libel action brought by a public official or public figure, a plaintiff is required by the First Amendment to prove that the defendant acted with actual malice and that actual malice must be shown with "convincing clarity." *Id.* at 244, 106 *S.Ct.* at 2508, 91 *L.Ed.*2d at 209 (quoting *New York Times Co. v. Sullivan*, 376 *U.S.* 254, 285–86, 84 *S.Ct.* 710, 728–29, 11 *L.Ed.*2d 686, 710 (1964)). In *Liberty Lobby*, the Court of Appeals for the District of Columbia found that although actual malice had to be proved by clear and convincing evidence, rather than by a preponderance, for purposes of summary judgment that "was irrelevant: To defeat summary judgment the [plaintiffs] did not have to show that a jury could find actual malice with 'convincing clarity.'" *Id.* at 247, 106 *S.Ct.* at 2509, 91 *L.Ed.*2d at 211.

The Supreme Court reversed and established a new standard for evaluating summary judgment motions under Federal Rule of Civil Procedure 56(c). It stated:

[W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If a defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." [*Improvement Co. v. Munson*, 14 *Wall.* 442, 448, 20 *L.Ed.* 867 (1872).]

In terms of the nature of the inquiry, this is no different from the consideration of a motion for acquittal in a criminal case, where the beyond-a-reasonable-doubt standard applies and where the trial judge asks whether a reasonable jury could

find guilt beyond a reasonable doubt. See *Jackson v. Virginia*, 443 *U.S.* 307, 318–319, 99 *S.Ct.* 2781, 2788–2789, 61 *L.Ed.*2d 560 (1979). Similarly, where the First Amendment mandates a "clear and convincing" standard, the trial judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity.

[*Id.* at 252, 106 *S.Ct.* at 2512, 91 *L.Ed.*2d at 214.]

*Celotex* involved a wrongful-death action against fifteen asbestos manufacturers. A factual issue was raised with respect to whether the decedent was exposed to Celotex asbestos products in Chicago in 1970–1971. 477 *U.S.* at 319–20, 106 *S.Ct.* at 2551, 91 *L.Ed.*2d at 271–72. The Court held that after passage of adequate time to complete the discovery, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 *S.Ct.* at 2552, 91 *L.Ed.*2d at 273. *Celotex* also held that the standard for granting summary judgment " 'mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)....' " *Id.* at 323, 106 *S.Ct.* at 2552–53, 91 *L.Ed.*2d at 273–74 (quoting *Liberty Lobby, supra,* 477 *U.S.* at 250, 106 *S.Ct.* at 2511, 91 *L.Ed.*2d at 213). Thus, *Celotex* established a weighing process in non-defamation summary judgment cases.

■ Read together, *Matsushita, Liberty Lobby* and *Celotex* adopted a standard that requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, supra,* 477 *U.S.* at 251–52, 106 *S.Ct.* at 2512, 91 *L.Ed.*2d at 214. That weighing process requires the court to be guided by the same evidentiary standard of proof—by a preponderance of the evidence or clear and convincing evidence—that would apply at the trial on the merits when deciding whether

there exists a "genuine" issue of material fact. *Id.* at 254–56, 106 *S.Ct.* at 2513, 91 *L.Ed.*2d at 215–16.[1]

*Dairy Stores, supra,* 104 *N.J.* at 125, 516 *A.*2d 220, was decided only four months after *Liberty Lobby* and *Celotex.* We noted in *Dairy Stores, id.* at 155–56, 516 *A.*2d 220, that we were not bound to follow the rule announced in *Liberty Lobby.* We reasoned that *Dairy Stores* involved actual malice as a common-law bar to the defense of fair comment, while *Liberty Lobby* involved actual malice as a constitutionally mandated component of a defamation action brought by a public official or public person. *Ibid. See Schwartz v. Worrall Publications, Inc.,* 258 *N.J.Super.* 493, 500–01, 610 *A.*2d 425 (1992) (noting that *Dairy Stores* dictates that the test for summary judgment in defamation cases differs depending on whether actual malice is implicated as a common-law concept or as a constitutionally required component of the cause of action).

Eight years after our decision in *Dairy Stores,* we again had occasion to address the appropriate standard governing summary judgment in a defamation case involving the element of actual malice. *Costello v. Ocean County Observer,* 136 *N.J.* 594, 643 *A.*2d 1012 (1994). *Costello* differed from *Dairy Stores* in that the plaintiff in *Costello,* unlike the plaintiff in *Dairy Stores,* was a "public figure." *Costello, supra,* 136 *N.J.* at 614, 643 *A.*2d 1012. That mandated application of *Liberty Lobby.* Offering no comment or criticism, we merely recited the test as follows:

> To determine whether a genuine issue of material fact exists regarding actual malice, a court must consider whether the plaintiff has produced the "quantum and quality of proof" necessary under the *New York Times v. Sullivan* standard.

---

[1] Commentators are not in agreement about the impact the *Celotex* trilogy will have on the adversarial process. *See* Robert M. Bratton, *Summary Judgment Practice In The 1990s: A New Day Has Begun—Hopefully,* 14 *Am.J.Trial Advoc.* 441 (1991); Gregory A. Gordillo, *Summary Judgment and Problems In Applying The Celotex Trilogy Standard,* 42 *Clev.St.L.Rev.* 263 (1994); Samuel Issacharoff and George Loewenstein, *Second Thoughts About Summary Judgment,* 100 *Yale L.J.* 73 (1990); Marcy J. Levine, *Summary Judgement: The Majority View Undergoes A Complete Reversal In The 1986 Supreme Court,* 37 *Emory L.J.* 171 (1988).

[*Schiavone Constr. Co. v. Time, Inc.,* 847 *F.*2d 1069, 1089 (3d Cir.1988)] The plaintiff must demonstrate that a reasonable jury could conclude that "clear and convincing" evidence exists that the defendants published the article with actual malice. [*Liberty Lobby, supra,* 477 *U.S.* at 254–55, 106 *S.Ct.* at 2513, 91 *L.Ed.*2d at 215–16.]

[*Costello, supra,* 136 *N.J.* at 614, 643 *A.*2d 1012.]

We concluded: "Applying the actual-malice standard through the prism of summary judgment, *Schiavone, supra,* 847 *F.*2d at 1091, we find that even when considering the evidence in the light most favorable to [the plaintiff], a reasonable factfinder could not find 'clear and convincing' evidence of [defendant's] actual malice." *Id.* at 618, 643 *A.*2d 1012 (citing *Liberty Lobby, supra,* 477 *U.S.* at 255, 106 *S.Ct.* at 2513–14, 91 *L.Ed.*2d at 216).

## IV

### A

Analytically, tying the test for summary judgment determinations to the question of what reasonable conclusions a rational jury can draw from the evidence is similar to an involuntary dismissal under *Rule* 4:37–2(b). We recognized as much in *Dairy Stores, supra,* 104 *N.J.* at 156, 516 *A.*2d 220. The standard for determining a motion for an involuntary dismissal under *Rule* 4:37–2(b) is the same as the standard for determining motions under *Rule* 4:40–1, and *Rule* 4:40–2. The motion

must be denied "if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." *R.* 4:37–2(b); *see* S. Pressler, *Current N.J. Court Rules, R.* 4:40–2 comment (1991). In each case, "the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord him [or her] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied." S. Pressler, *supra, R.* 4:40–2 comment (1991); *see Dolson v. Anastasia,* [55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969).]

[*Lanzet v. Greenberg,* 126 *N.J.* 168, 174, 594 *A.*2d 1309 (1991).]

*Evers v. Dollinger,* 95 *N.J.* 399, 471 *A.*2d 405 (1984), expressed the standard for deciding *Rule* 4:37–2(b) motions more succinctly when it observed that courts should "treat plaintiff's proofs as uncontradicted, both as to liability and damages." *Id.* at 402, 471 *A.*2d 405. The same standard applies to determine whether a

*prima facie* case has been established by the party bearing the burden of proof in a trial. "[T]he court must look at the evidence and inferences which may reasonably be deduced therefrom in a light most favorable to the plaintiff, and if reasonable minds could differ as to whether any negligence had been shown, the motion should be denied." *Bell v. Eastern Beef Co.*, 42 *N.J.* 126, 129, 199 *A.*2d 646 (1964).

█ The only distinction between 1) a directed verdict at the end of plaintiff's case pursuant to *Rule* 4:37–2(b), 2) a directed verdict pursuant to *Rule* 4:40–1 after all the evidence has been presented, 3) a judgment notwithstanding the verdict pursuant to *Rule* 4:40–2, and a summary judgment that allows a *Rule* 4:37–2(b) weighing of evidence to determine if a genuine issue of material fact exists, is that summary judgment motions are generally decided on documentary-evidential materials, while the directed verdicts are based on evidence presented during a trial. Under our holding today, the essence of the inquiry in each is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, supra,* 477 *U.S.* at 251–52, 106 *S.Ct.* at 2512, 91 *L.Ed.*2d at 214.

Of course, there is in this process a kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials. This process, however, is not the same kind of weighing that a factfinder (judge or jury) engages in when assessing the preponderance or credibility of evidence. On a motion for summary judgment the court must grant all the favorable inferences to the non-movant. But the ultimate factfinder may pick and choose inferences from the evidence to the extent that "a miscarriage of justice under the law" is not created. *R.* 4:49–1(a).

### B

█ Measured by that standard, a dismissal under *Rule* 4:37–2(b), *Rule* 4:40–1, *Rule* 4:40–2 or for failure to allege or prove a *prima facie* case, does not unduly intrude into the province of the

jury. In those instances, there simply is no issue to be decided by a jury based on the evidence. A jury resolves factual, not legal, disputes. If a case involves no material factual disputes, the court disposes of it as a matter of law by rendering judgment in favor of the moving or non-moving party on the issue of liability or damages or both. Thus, the right of trial by jury remains inviolate. *N.J. Const.* art. I, ¶ 9; *Weinisch v. Sawyer*, 123 *N.J.* 333, 342–44, 587 *A.*2d 615 (1991); *Shaner v. Horizon Bancorp*, 116 *N.J.* 433, 446–55, 561 *A.*2d 1130 (1989); *Hager v. Weber*, 7 *N.J.* 201, 211 (1951); *500 Columbia Turnpike Assocs. v. Haselmann*, 275 *N.J.Super.* 166, 171, 645 *A.*2d 1210 (1994). Furthermore, the right to a jury trial has never prevented our courts from granting summary judgment in an appropriate case even before *Judson* was decided. *National Surety Corp. v. Clement*, 133 *N.J.L.* 22, 26, 42 *A.*2d 387 (E. & A.1945); *Jasion v. Preferred Accident Ins. Co.*, 113 *N.J.L.* 108, 110–111, 172 *A.* 367 (E. & A.1934); *Coykendall v. Robinson*, 39 *N.J.L.* 98, 100–01 (E. & A. 1876).

Additionally, in civil matters the constitutional right to a jury trial is not absolute. *Asbestos Fibres, Inc. v. Martin Labs., Inc.*, 12 *N.J.* 233, 239, 96 *A.*2d 395 (1953). It is waived unless properly requested pursuant to *Rule* 4:35–1. *See 500 Columbia Turnpike Assocs., supra*, 275 *N.J.Super.* at 170–71, 645 *A.*2d 1210. Even when requested, the failure to present evidence warranting submission of a factual issue to the jury is the functional equivalent of a waiver of the right to have a jury decide the case. *See Bussell v. DeWalt Prods. Corp.*, 259 *N.J.Super.* 499, 512, 614 *A.*2d 622 (1992) (holding when the facts are undisputed or when the parties enter into a stipulation of the facts, the need for a jury is waived), *certif. denied*, 133 *N.J.* 431, 627 *A.*2d 1137 (1993). We are satisfied that the summary judgment standard we adopt does not "denigrate the role of the jury." *Liberty Lobby, supra*, 477 *U.S.* at 255, 106 *S.Ct.* at 2513, 91 *L.Ed.*2d at 216; *see Galloway v. United States*, 319 *U.S.* 372, 63 *S.Ct.* 1077, 87 *L.Ed.* 1458 (1943) (holding the right to jury trial attaches only if an issue requiring resolution by a jury is presented).

### C

At the request of the Court, the Civil Practice Committee has been studying the summary judgment practice in New Jersey. A subcommittee assigned to study the problem has informed the Civil Practice Committee that it "believes that incorporating the [*Liberty Lobby*–Celotex] rule into our [*Rule*] 4:46–2 might be helpful. It could be accomplished simply by adding to [*Rule*] 4:46–2 language borrowed from [*Rule*] 4:37–2(b)." Under that proposal, *Rule* 4:46–2 would be amended to add several new paragraphs. The proposed paragraph (c) would contain the following: "A dispute of fact is genuine if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom, could sustain a judgment in favor of the non-moving party." That proposed change to *Rule* 4:46–2 has been approved by the Civil Practice Committee as of May 24, 1995, for inclusion in the Committee's next report.

The majority of courts in other jurisdictions that have considered the *Liberty–Lobby–Celotex* rule in non-First Amendment cases have adopted it. *See, e.g., Orme School v. Reeves,* 166 *Ariz.* 301, 802 *P.*2d 1000, 1003–09 (1990); *Short v. Little Rock Dodge, Inc.,* 297 *Ark.* 104, 759 *S.W.*2d 553, 554 (1988); *Montrose Chemical Corp. v. Superior Court,* 6 *Cal.*4th 287, 24 *Cal.Rptr.*2d 467, 475 n. 4, 861 *P.*2d 1153, 1161 n. 4 (1993); *Union Bank v. Superior Court,* 31 *Cal.App.* 4th 573, 579–590, 37 *Cal.Rptr.*2d 653 (1995); *Continental Air Lines, Inc. v. Keenan,* 731 *P.*2d 708, 712–13 (Colo. 1987); *Burkhart v. Davies,* 602 *A.*2d 56, 58–59 (Del.1991), *cert. denied,* 504 *U.S.* 912, 112 *S.Ct.* 1946, 118 *L.Ed.*2d 551 (1992); *Hill v. White,* 589 *A.*2d 918, 921 n. 8 (D.C.1991); *Hall v. State,* 7 *Haw.App.* 274, 756 *P.*2d 1048, 1055, *appeal dismissed* and *cert. denied,* 488 *U.S.* 803, 109 *S.Ct.* 33, 102 *L.Ed.*2d 13 (1988); *Benner v. Bell,* 236 *Ill.App.*3d 761, 177 *Ill.Dec.* 1, 6–7, 602 *N.E.*2d 896, 901–02 (1992), *appeal denied,* 148 *Ill.*2d 639, 183 *Ill.Dec.* 15, 610 *N.E.*2d 1259 (1993); *Shaw v. Soo Line R.R. Co.,* 463 *N.W.*2d 51, 54 (Iowa 1990); *Reilly v. Dynamic Exploration, Inc.,* 571 *So.*2d 140, 144

(La.1990); *Trahan v. Thenamaris Ship Management, Inc.,* 614 *So.*2d 362, 364 (La.Ct.App.1993); *Mackey v. Dorsey,* 655 *A.*2d 1333, 1337 (Md.Ct.Spec.App.1995); *Kourouvacilis v. General Motors Corp.,* 410 *Mass.* 706, 575 *N.E.*2d 734, 738–40 (1991); *Skinner v. Square D Co.,* 445 *Mich.* 153, 516 *N.W.*2d 475, 480–81 n. 9 (1994); *Frank v. Winter,* 528 *N.W.*2d 910, 913–14 (Minn.Ct.App. 1995); *Towner v. Moore,* 604 *So.*2d 1093, 1098 (Miss.1992); *Sloan v. Miller Bldg. Corp.,* 119 *N.C.App.* 162, 458 *S.E.*2d 30, 32 (1995); *Anderson v. Service Merchandise Co., Inc.,* 240 *Neb.* 873, 485 *N.W.*2d 170, 173–75 (1992); *Bulbman, Inc. v. Nevada Bell,* 108 *Nev.* 105, 825 *P.*2d 588, 591 (1992); *Goradia v. Hahn Co.,* 111 *N.M.* 779, 810 *P.*2d 798, 800–01 (1991); *Cawein v. Flintkote Co.,* 203 *A.D.*2d 105, 610 *N.Y.S.*2d 487, 488 (1994); *In re Estate of Stanton,* 472 *N.W.*2d 741, 743 (N.D.1991); *Wing v. Anchor Media, Ltd.,* 59 *Ohio St.*3d 108, 111, 570 *N.E.*2d 1095, 1099 (1991); *Marshall v. Plainville IGA,* 98 *Ohio App.*3d 473, 475–76, 648 *N.E.*2d 899, 901 (1994); *Baughman v. American Tel. & Teleg. Co.,* 306 *S.C.* 101, 410 *S.E.*2d 537, 545–46 (1991); *Parsons v. Dacy,* 502 *N.W.*2d 108, 110 (S.D.1993); *Byrd v. Hall,* 847 *S.W.*2d 208, 210–16 (Tenn.1993); *State v. G.S. Blodgett Co.,* 656 *A.*2d 984, 988 (Vt. 1995); *Young v. Key Pharmaceuticals, Inc.,* 112 *Wash.*2d 216, 770 *P.*2d 182, 187–88 (1989); *Williams v. Precision Coil, Inc.,* 194 *W.Va.* 52, 459 *S.E.*2d 329, 335–39 (1995); *Baxter v. Wisconsin Dep't Natural Resources,* 165 *Wis.*2d 298, 477 *N.W.*2d 648, 654 (Ct.App.1991), *review denied,* 485 *N.W.*2d 412 (Wis.1992).

The Arizona Supreme Court has aptly described why so many jurisdictions have adopted the standard articulated in *Celotex* and *Liberty Lobby.* It stated:

> We live in what is widely perceived as a time of great increase in litigation and one in which many meritless cases are filed, vastly increasing the dockets before our trial judges. As a result, the courts of this country have been urged to liberalize the standards so as to permit summary judgment in a larger number of cases. *See, e.g.,* Report of the Commission on the Courts, The Future of Arizona Courts, at 62 (1989).
>
> [*Orme School, supra,* 802 *P.*2d at 1003–04 (footnotes omitted).]

■ Consistent with this national trend, we hold that under *Rule* 4:46–2, when deciding summary judgment motions trial

courts are required to engage in the same type of evaluation, analysis or sifting of evidential materials as required by *Rule* 4:37–2(b) in light of the burden of persuasion that applies if the matter goes to trial. Accordingly, we request the Civil Practice Committee to recommend appropriate rule changes on an expedited basis that are necessary to implement the standard we establish today.

Under this new standard, a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. The "judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, supra,* 477 *U.S.* at 249, 106 *S.Ct.* at 2511, 91 *L.Ed.*2d at 212. Credibility determinations will continue to be made by a jury and not the judge. If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46–2. *Liberty Lobby, supra,* 477 *U.S.* at 250, 106 *S.Ct.* at 2511, 91 *L.Ed.*2d at 213. The import of our holding is that when the evidence "is so one-sided that one party must prevail as a matter of law," *Liberty Lobby, supra,* 477 *U.S.* at 252, 106 *S.Ct.* at 2512, 91 *L.Ed.*2d at 214, the trial court should not hesitate to grant summary judgment.

### D

It is critical that a trial court ruling on a summary judgment motion not "shut a deserving litigant from his [or her] trial." *Judson, supra,* 17 *N.J.* at 77, 110 *A.*2d 24 (citation omitted). At the same time, we stress that it is just as important that the court not "allow harassment of an equally deserving suitor for immedi-

ate relief by a long and worthless trial." *Ibid.* (citation omitted). What we said in *Judson* is worth repeating:

> If these general rules are applied by the courts with discernment and care, the summary judgment procedure, without unjustly depriving a party of a trial, can effectively eliminate from crowded court calendars cases in which a trial would serve no useful purpose and cases in which the threat of trial is used to coerce a settlement.
>
> [*Ibid.* (quoting Asbill and Snell, *Summary Judgment Under the Federal Rules,* 51 *Mich.L.Rev.* 1143, 1172 (1953).]

To send a case to trial, knowing that a rational jury can reach but one conclusion, is indeed "worthless" and will "serve no useful purpose."

The thrust of today's decision is to encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves. Some have suggested that trial courts out of fear of reversal, or out of an overly restrictive reading of *Judson, supra,* 17 *N.J.* at 67, 110 *A.*2d 24, or a combination thereof, allow cases to survive summary judgment so long as there is *any* disputed issue of fact. As to fear of reversal, we believe our judges are made of sterner stuff and have sought conscientiously over the years to follow the law. We may have permitted an encrustation of the *Judson* standard that obscured its essential import. A summary judgment motion has in the past required and will in the future continue to require a searching review. *Millison v. E.I. du Pont de Nemours & Co.,* 101 *N.J.* 161, 167, 501 *A.*2d 505 (1985) (noting that *Judson* requires a "discriminating search" of the record to determine whether there exists a "genuine issue of material fact requiring disposition at trial"); *see Ziemba v. Riverview Medical Center,* 275 *N.J.Super.* 293, 298–303, 645 *A.*2d 1276 (1994).

Trial courts must keep in mind that the summary judgment rule should be applied so as to serve two competing jurisprudential philosophies. *Robbins v. Jersey City,* 23 *N.J.* 229, 240, 128 *A.*2d 673 (1957). As this Court observed over a quarter of a century ago:

> On the one hand is the desire to afford every litigant who has a *bona fide* cause of action or defense the opportunity to fully expose his case.... On the other hand,

protection is to be afforded against groundless claims and frivolous defenses, not only to save antagonists the expense of protracted litigation but also to reserve judicial manpower and facilities to cases which meritoriously command attention. [*Id.* at 240–41, 128 *A.*2d 673 (citations omitted).]

## V

The trial court in the present case properly concluded that the evidence presented by KRA and Gould does not create a "genuine" issue of material fact under *Rule* 4:46–2. As the motion judge found, the competent evidential material presented leaves no doubt of any kind about whether Gould advised Brill of the availability of a conditional-receipt. By Gould's own unequivocal admission, he did not. The trial court thus correctly held that "[t]here is no evidence from which a jury could conclude that Mr. [Gould] offered the temporary option."

The fact that Brill reviewed and signed his insurance application does not alter the inescapable conclusion that Gould failed to make Brill aware of the conditional-receipt option. By signing that application, Brill did not acknowledge that he had been informed of the availability of a conditional receipt. Although the application contains a section devoted to the conditional-receipt option, there was no evidence to suggest that even if Brill read the option, he would understand its meaning.

The common law has long recognized that an insurance broker owes a duty to the insured to act with reasonable skill and diligence in performing the services of a broker. *Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.*, 135 *N.J.* 182, 189, 638 *A.*2d 1288 (1994) (citations omitted). We have concluded previously that as a matter of law, the duty owed by a broker to an applicant for insurance includes the duty to inform the potential insured of the availability of immediate insurance coverage through a temporary binder. *Id.* at 190, 638 *A.*2d 1288 (citing *Bates v. Gambino*, 72 *N.J.* 219, 222–25, 370 *A.*2d 10 (1977)). Thus, if a broker does not inform the prospective insured of the availability of a temporary binder option, the broker has committed professional negligence. *See Bates, supra,* 72 *N.J.* at 225, 370 *A.*2d 10 (noting that

this Court's case law sets forth the legal requirements of an insurance broker). We agree with the trial court that Gould was negligent as a matter of law. *Carter, supra*, 135 *N.J.* at 189–90, 638 *A.*2d 1288.

We are thoroughly convinced that Brill's refusal to provide a check for the entire amount of the policy premium is irrelevant to the issue of whether Gould was negligent for failing to advise Brill of the temporary binder option. That refusal can be considered only in the context of the facts known to Brill at the time. When Brill told Gould that he would not pay the policy premium in advance, Brill's knowledge of the relevant facts was incomplete. Indeed, when Brill made that statement, Gould had not made Brill aware of the conditional-receipt option that would have allowed Brill to obtain virtually immediately $500,000 in coverage for the very small sum of $141.87. Brill was also unaware that once he obtained a conditional receipt, any subsequent change in his health would be immaterial to coverage under the primary policy. Because Brill's statement refusing to provide a check for the full policy premium was based on insufficient knowledge of the available option to obtain a conditional receipt, it has no bearing on the issue of whether Gould acted negligently in failing to advise Brill of the availability of a conditional receipt or on the issue of proximate cause.

We likewise find that the opinion of defendants' expert broker does not create a genuine issue of material fact regarding Gould's negligence. Castellini stated specifically:

The agent was prevented from issuing a Conditional Receipt, though it was Gould's practice to do so when possible, by Brill's refusal to make a premium payment with the application. There are a number of good and cogent reasons why producers—like Gould—*want* to take a premium deposit with the application. The agent, however, cannot force an applicant to do that which the applicant has refused to do.

Castellini's conclusion that Gould did not breach any duty owed to Brill is based on the false assumption that Gould performed all of his duties in the manner required by the applicable standard of care and that a conditional receipt was not issued because Brill refused to pay the entire premium. An expert's opinion of no

negligence based on erroneous or nonexistent facts is worthless. *Johnson v. Salem Corp.,* 97 *N.J.* 78, 91, 477 *A.2d* 1246 (1984); *Buckelew v. Grossbard,* 87 *N.J.* 512, 524, 435 *A.2d* 1150 (1981).

A party cannot defeat a motion for summary judgment merely by submitting an expert's report in his or her favor. *See Ziemba, supra,* 275 *N.J.Super.* at 302, 645 *A.2d* 1276. In order for such a report to have any bearing on the appropriateness of summary judgment, it must create a genuine issue of material fact. *Id.* at 301–03, 645 *A.2d* 1276. Here, because Castellini's conclusion regarding Gould's liability is based on a factually inaccurate and unjustifiable assertion, we agree with the trial court's conclusion that Castellini's report does not create a genuine issue of material fact precluding the grant of summary judgment.

We also reject defendants' contention that *Dancy, supra,* 114 *N.J.* at 573, 556 *A.2d* 312, required the trial court to draw an inference of no negligence on the part of Gould based on Brill's signing of the application. *Dancy* involved a claim against an automobile insurance agent based on the agent's alleged failure to inform an insured of the availability of additional uninsured and underinsured motorist (UM and UIM) coverage. *Id.* at 571, 556 *A.2d* 312. There we held that the agent was not entitled to summary judgment merely because the plaintiff had signed the insurance application, which contained a statement acknowledging that the insured had been informed of the availability of UM and UIM coverage. *Id.* at 573, 556 *A.2d* 312. While we did suggest that the factfinder in that case could weigh the signing of the application against the plaintiff in considering whether the agent had breached a duty, *ibid.,* we did so only because the application expressly stated that the insured had been informed of the availability of UM and UIM coverage, contrary to his contention in the lawsuit that he had not been so informed. *See id.* at 571, 556 *A.2d* 312. *Dancy* has no bearing on the unavoidable reality in this case that Gould breached his duty as an insurance broker when he failed to advise Brill of the availability of a conditional receipt.

Finally, the competent evidential materials create no genuine issue of material fact with respect to whether Gould's failure to advise Brill of the conditional-receipt option was a proximate cause of damages to plaintiff. We are satisfied that no reasonable jury could conclude, based on the facts in the record, that Gould's negligence was not a proximate cause of Brill's lack of an effective Guardian life-insurance policy at the time of his death. It is clear from the record that Brill wanted to secure life-insurance coverage as quickly as possible. There can be no doubt, then, that had he been given the chance, Brill would have secured immediate, temporary coverage by paying the small sum of $141.87. Coverage under the conditional-receipt option would have become effective on June 19, 1989, the date of his successful medical examination. As of that date, Brill's change in health would have become immaterial to the existence of coverage under the primary policy. When the primary policy was issued on July 21, 1989, it would have replaced the coverage provided by the conditional receipt. Therefore, when Brill died, he would have been covered in the amount of $750,000. The evidence thus compels the unavoidable conclusion that because of Gould's negligence, plaintiff has been deprived of $750,000 that she otherwise would have received. That entitles plaintiff to judgment for the face value of the policy.

## VI

In sum, we hold that the evidence in the record creates no "genuine" issue of material fact precluding the grant of summary judgment under *Rule* 4:46–2. It is undisputed, and no reasonable jury could conclude otherwise, that Gould failed to advise Brill of the availability of a conditional receipt. As a matter of law, that failure constituted a breach of the duty Gould owed to Brill. Finally, the record compels the unavoidable conclusion that Gould's negligence was a proximate cause of damages to plaintiff in the amount of $750,000.

The rule we adopt today shall apply to this case and all cases pending in the trial and appellate courts involving unresolved

issues concerning summary judgment, including those cases in which summary judgment was denied previously.

The judgment of the Appellate Division is affirmed.

For affirmance—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.