**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3193-22

IN THE MATTER OF THE
ESTATE OF VINCENZO A.
GIORGIO, deceased.

_____

Submitted December 3, 2024 – Decided December 17, 2024

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. P-000191-22.

Marco Benucci LLC, attorneys for appellants Donato Giorgio and Joseph Giorgio (Marco M. Benucci, of counsel and on the briefs).

Bertone Piccini LLP, attorneys for respondent Varinia Grande-Pena (James Anthony DiNiro, of counsel and on the brief).

PER CURIAM

Defendants Donato Giorgio and Joseph Giorgio appeal from the May 19, 2023 Chancery Division, Probate Part order, which granted plaintiff Varinia Grande-Pena summary judgment, dismissed defendants' counterclaim, and

admitted decedent Vincenzo A. Giorgio's will to probate.  Following our review of the arguments, the record, and applicable law, we affirm.

I.

We view the following facts established in the summary judgment record in the light most favorable to defendants, the non-moving party.  See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023).  On March 29, 2022, Vincenzo[1] unexpectedly passed away.  He was survived by his two brothers, Donato and Joseph; his nephews, Joseph's son Anthony Giorgio, and Donato's sons Michael Giorgio and Antonio Giorgio; his niece, Donato's daughter Francesca Giorgio; and his fiancée, Grande-Pena.  Vincenzo and Donato jointly owned a family home in East Orange.  Vincenzo was an attorney with Agrapidis & Maroules from 2014 until his passing.  His primary practice area was New Jersey workers' compensation.  At the time of his death, Vincenzo left a last will and testament dated March 26, 2019.

After experiencing medical complications, which necessitated surgery on March 27, 2019, Vincenzo decided to prepare a will.  On March 26, Vincenzo approached a co-worker, Neil Marion, Esq., to prepare his will.  Marion advised

---

[1]  We refer to the family members by their first names for clarity, intending no disrespect, and to avoid any confusion caused by their common surname.

Vincenzo to "draft the will" because he was "an attorney" and then Marion "would execute it." The same day, at approximately 3:26 p.m., Vincenzo emailed his paralegal, Selene Alcivar, a draft of the will.

Before the end of the day, Vincenzo executed his last will and testament. He also executed a medical proxy and durable power of attorney appointing Grande-Pena. The will contained Vincenzo's signature, and two witnesses, Alcivar and Vincenzo's co-worker Paul Agradipis, Esq, signed an attestation clause. Marion notarized the will. The first page of the will stated:

> SECOND: I give all the rest, residue and remainder of my property and estate, both real and personal, of whatever kind and wherever located, that I own or to which I shall be in any manner entitled at the time of my death (collectively referred to as my "residuary estate"), as follows:
>
> (a) To My Fiancé, Varinia Grande-Pena, shall survive me, they will inherit my entire estate consisting of my house in US, my money in the Gabelli Fund and Charles Schwab and all the property I inherit in Italy. My life insurance policy with NY Life and Mass Mutual and my bonds in Italy.
>
> (b) My nephews Anthony and Michael Giorgio shall share equally in my certificate of deposit in Gibraltar bank.
>
> (c) My Niece Francesca Giorgio shall inherit my house in Italy at No. & Via San Marco, and my

A-3193-22

nephew shall inherit my office space locate a
Corso Battisto in S. Andrea di Cose.

The will contained multiple typographical errors, including inconsistent capitalization of named beneficiaries. The first page was not numbered, the correct address for Vincenzo's office property in Italy was not included, and the nephew intended to inherit the office property was not specified.

Following Vincenzo's death, Grande-Pena informed Jerry Maroules, Esq., a partner at Agrapidis & Maroules, that she only had a copy of the will. He searched the firm's filing cabinet, which was always locked, and found the original will. Only Maroules, his law firm partner Evans Agrapidis, and the office manager had keys to the filing cabinet. After retrieving the will, he provided it to Grande-Pena to admit to probate.

Thereafter, Grande-Pena informed Maroules that Donato wanted to meet to discuss the estate. A few days later, Grande-Pena, Donato, and two of Donato's children met Maroules at his office, and Donato was provided a copy of the will. Maroules explained that Vincenzo's will bequeathed his ownership interest in the East Orange property to Grande-Pena, making her and Donato co-owners, and left her the majority remainder of the estate.

Following receipt of the will, Donato contacted Marion to discuss its contents. Marion described the meeting as a "fishing expedition" in which

Donato raised non-existent issues with the will. Donato also contacted Alcivar to discuss the estate. He went to Alcivar's workplace, and Francesca contacted her via social media and text messages.

On April 11, 2022, Donato filed a caveat contesting the probate of Vincenzo's will.[2] On May 25, Grande-Pena filed an order to show cause and a verified complaint, seeking to lift the caveat and admit Vincenzo's will to probate. On June 9, defendants filed an answer and counterclaim, seeking to void the will and obtain an accounting. Defendants' counterclaim alleged the will "contained numerous misnomers and typographical errors, including but not limited to incorrect pronouns, incorrect addresses, and incorrect capitalization." Defendants further alleged that Alcivar confirmed the will "given to [d]efendants was not the same [l]ast [w]ill and [t]estament [Vincenzo] executed, and specifically stated that [d]ecedent had bequeathed his interest in the" East Orange property to Donato. The counterclaim also stated that "[u]pon information and belief[,] the first page of the [l]ast [w]ill and [t]estament was switched and/or altered."

---

[2] The Surrogate's Court may not admit a will to probate where "a caveat has been filed with it" or "a doubt arises on the face of a will or a will has been lost or destroyed." R. 4:82(1)-(2).

During discovery, Alcivar testified at her deposition that she often drafted legal documents for Vincenzo, which he would review multiple times "before the final copy went out." However, Vincenzo often made mistakes when typing his own documents. Alcivar had never previously assisted Vincenzo in drafting a will. She estimated the will was exchanged and edited approximately four times. After discussing the various alleged discrepancies on the first page of the will, such as inconsistent capitalization, missing pagination, and incorrect grammar, Alcivar testified she did not believe the first page was what she would have drafted given the errors. She conveyed it "was a very long time ago," and she did not remember the drafting process. Alcivar denied informing Donato that the will was inaccurate and that Vincenzo intended to bequeath his interest in the East Orange property to Donato.

Marion testified that while Vincenzo was not "the most careful in his work . . . [,] it was always towards a good result," and he clarified Vincenzo could be "careless in typing." Marion further stated that after Donato met with him and questioned the validity of the will, he found a copy of the same will saved in Vincenzo's computer files, along with another unexecuted draft will that explicitly outlined Vincenzo's reasons for disinheriting his brothers.

A-3193-22

The parties had an original discovery end date of October 28, 2022. Thereafter, the court extended the discovery end date to March 3, 2023, and the trial date was set for May 16, 2023. Grande-Pena timely moved for summary judgment. In support of her motion, Grande-Pena certified that Vincenzo gave her an accurate copy of his will on March 26, 2019. Further, the original will was kept at the offices of Agrapidis & Maroules from the time of execution until Vincenzo's passing. She certified to not having access to the original will after its execution.

On May 19, following oral argument, the court issued an order accompanied by an oral decision, which granted Grande-Pena summary judgment, lifted the caveat and dismissed defendants' counterclaim, and admitted Vincenzo's March 26, 2019 will to probate. The court found the will was afforded a presumption of validity as it was in writing, signed by Vincenzo, and contained two attesting witnesses' signatures. Recognizing defendants bore the burden of proof, the court found no genuine issues of material fact supporting defendants' assertion that the will submitted to probate was not the original.

On appeal, defendants argue the court erroneously granted summary judgment because: Alcivar's testimony raises a genuine issue of material fact regarding the authenticity of the will; a reading of the will raises genuine issues

of material facts regarding its authenticity; Alcivar's testimony sufficiently rebutted the presumption of validity; and summary judgment was inappropriate, as discovery was incomplete.

## II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, courts must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)). Our review entails determining "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed

8

issue in favor of the non-moving party." C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)).

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (emphasis omitted) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). "Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)) (internal quotation marks omitted). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))). If the evidence in the record is "'so one-sided that one party must prevail as a matter of law' . . . the trial court should not hesitate

to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

III.

Defendants contend Vincenzo's will submitted to probate is "not [his] actual [w]ill" and that "the contents of the [w]ill are in dispute." We begin by recognizing that pursuant to N.J.S.A. 3B:3-2(a), a validly executed will must be: "(1) in writing"; "(2) signed by the testator"; and "(3) signed by at least two individuals, each of whom signed within a reasonable time after each witnessed either the signing of the will . . . or the testator's acknowledgment of that signature or acknowledgment of the will." See also N.J.S.A. 3B:3-9 ("A written will is validly executed if executed in compliance with N.J.S.[A.] 3B:3-2 . . . .").

A defendant challenging a duly executed will bears the burden of proving the will is invalid. See In re Raynold's Est., 132 N.J. Eq. 141, 147 (Prerog. Ct. 1942), aff'd, 133 N.J. Eq. 346 (E. & A. 1943); see also cf. In re Est. of Stockdale, 196 N.J. 275, 302 (2008) (recognizing that "a caveator or challenger seeking to set aside a will" generally bears the burden of proving the will was a product of undue influence). An attestation clause serves "as 'a most important element of proof,'" providing the will a presumption of validity "deemed impregnable unless it is devastated by 'strong and convincing evidence.'" In re Est. of

10

Politowicz, 124 N.J. Super. 9, 11 (App. Div. 1973) (quoting In re DuBois, 9 N.J. Super. 280, 283-84 (App. Div. 1950)); see also N.J.S.A. 3B:3-4 (providing draft language for an affidavit, which, if included in a will, makes it "simultaneously executed, attested, and . . . self-proved").

Vincenzo's original will submitted to probate was duly executed under N.J.S.A. 3B:3-2. It is undisputed the will is in writing, signed by Vincenzo, and signed by two witnesses, Alcivar and Paul Agrapidis. Marion notarized the witnesses' signatures at the time of signing, and they have since been authenticated. Further, the will is self-proving, as it was properly executed and acknowledged under N.J.S.A. 3B:3-4. Defendants, therefore, bear the burden of demonstrating the will is invalid.

We address together defendants' contentions that genuine issues of material fact exist regarding the will's authenticity, because the will contains numerous errors, and Alcivar, the "preparer of the will," testified that the first page was "not accurate." Defendants are provided all reasonable inferences, and we are bound to review "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party [Grande-Pena] is entitled to summary judgment as a matter of law." See Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

A-3193-22

Alcivar corroborated that Vincenzo's will was drafted and signed on the same day because he was imminently undergoing a surgical procedure. We note the parties do not dispute the existence of typographical errors in the will. Alcivar had explained that this was the first will she had ever assisted in drafting, and she was unsure of the format. She typically followed a template, and errors could "carry over to the final document." Alcivar also testified that she drafted the will "a very long time ago and [did not] necessarily remember" specific information about drafting the will with such errors. After acknowledging Vincenzo often made typographical mistakes and almost always used dictation, Alcivar remarked that she did not believe the first page was "the same page that [she] drafted," because the names were not all capitalized, there were spelling and grammar errors, and the first page was not numbered.

Notably, Alcivar did not testify that the original will kept in the locked cabinet, which Vincenzo signed and she had witnessed with Paul Agrapidis, was not the fully executed will dated March 26, 2019. While Alcivar questioned whether the first page of the will was the final edited version she had typed, she did not testify that the executed will was altered or modified. Alcivar also denied telling Donato that the will did not reflect Vincenzo's intentions and that he was the intended beneficiary of the East Orange property. After reviewing

12

the will, she testified it was an accurate reflection of Vincenzo's wishes. Providing defendants all reasonable inferences from the competent evidence, we conclude Alcivar's testimony fails to raise a material issue of fact rebutting the presumption of the will's validity.

Defendants maintain the will's "deficiencies," consisting of "numerous misnomers and typographical errors, including but not limited to incorrect pronouns, incorrect addresses, and incorrect capitalization," coupled with Alcivar's testimony, demonstrate genuine authenticity issues. We are unpersuaded. The alleged errors, such as the failure to use consistent capitalization, the use of the pronoun "they" when referencing Grande-Pena, and the lack of pagination on the first page, are immaterial. The alleged deficiencies, in light of Alcivar's testimony and the record, do not yield a genuine material issue of fact, rebutting the presumption of the will's valid execution. Defendants have only proffered facts "which are immaterial" and of an "insubstantial nature, a mere scintilla, 'fanciful, . . . or merely suspicious.'" Globe Motor Co., 225 N.J. at 480 (quoting Brill, 142 N.J. at 529), see also Brill, 142 N.J. at 540 (quoting Anderson, 477 U.S. at 251-52).

We note Maroules testified that Vincenzo had emailed the drafted will—which contained the same first page with typographical errors as the original

13

will submitted to probate—on the date executed. Marion also found a draft of the same will saved in Vincenzo's legal files. Notably, the draft copies were obtained from the firm's email accounts and server. Maroules' unrefuted testimony was that after Vincenzo passed, he obtained the original will from the firm's locked filing cabinet, which only three people had access to. As the court found, defendants fail to proffer "any conceivable evidence . . . that would offer an explanation of who would have obtained access to the firm's locked cabinet." We concur with the court's finding "that there is [no] evidence in this record that would support a question [of fact] that . . . the original will that was retrieved . . . was not the will of . . . [Vincenzo]." Therefore, we conclude no credible evidence in the record creates a genuine material issue of fact rebutting Maroules' testimony that he provided the original will, which Vincenzo intended to be his last will and testament.

IV.

Finally, we reject defendants' argument, raised for the first time on appeal, that the court prematurely granted summary judgment because discovery was incomplete. While defendants argued before the court that certain documents were not served before depositions were conducted, defendants never raised the argument that discovery was incomplete. We generally decline to consider

14

questions or issues not presented before the trial court when an opportunity for such a presentation is available unless the questions raised on appeal concern jurisdiction or matters of great public interest. <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973); <u>see also</u> <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014). Nevertheless, having considered defendants' arguments, we add only the following comments.

The discovery end date in this matter was March 3, 2023. Marion was deposed on January 19, 2023, and Maroules was deposed on February 9. They both discussed during their depositions that the drafted will, which matched the will submitted to probate, was digitally saved and emailed. Thereafter, in February, Grande-Pena's counsel produced to defendants Vincenzo's emailed draft will that had identical deficiencies to the executed will. Defendants did not move to extend the discovery end date seeking further discovery. Thus, defendants' contention that discovery was incomplete is without merit.

To the extent that we have not addressed defendants' remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3193-22