947 A.2d 686 (2008)
400 N.J. Super. 398
Joseph BURKE and Timothy Burke, Plaintiffs-Appellants, and
Nancy Burke, Plaintiff,
v.
SEA POINT REALTORS, Thomas Meyer, Patricia Meyer and Dzintars Abelite (both individually and in his capacity as Guardian of Alfreds Nikmanis, an incapacitated person), Defendants-Respondents.
Docket No. A-5652-06T1
Superior Court of New Jersey, Appellate Division.
Submitted March 31, 2008.
Decided May 30, 2008.
*687 Joseph Burke and Timothy Burke, appellants pro se.
Orlovsky, Grasso, Bolger, Mensching & Daley, Toms River, for respondents Sea Point Realtors, Thomas Meyer and Patricia Meyer (John J. Mensching, on the brief).
Mulvaney, Coronato & Brady, Toms River, for respondent Dzintars Abelite (both individually and in his capacity as Guardian of Alfred Nikmanis, an incapacitated person) (Terry F. Brady, on the brief).
Before Judges COLLESTER, C.S. FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
FISHER, J.A.D.
This case was triggered by a guardian's decision to retain defendant Sea Point Realty to market real property owned by the guardian's ward. Without notice to plaintiffs or other disappointed offerors, the guardian obtained the Probate judge's approval of a conveyance to defendants Thomas and Patricia Meyer without clearly revealing that the Meyers were the principals of Sea Point. Based on this and defendants' alleged attempts to discourage buyers during the marketing process, plaintiffs filed this action for damages. We conclude that plaintiffs' claims were not precluded by the proceedings in the guardianship action and, with one exception, reverse the summary judgment entered in defendants' favor.

I

A. The Proceedings in The Probate Part
Alfreds Nikmanis was the owner of real property in Brick Township. In light of his deteriorating physical and mental condition, his friend of many years, defendant Dzintars Abelite commenced an action, pursuant to N.J.S.A. 3B:13-1 to -31 and R. 4:86-1 to -6, for a declaration that Nikmanis was incapacitated and unable to manage his affairs. On May 19, 2005, a judgment was entered that appointed *688 Abelite as the guardian of Nikmanis's person and property.
Abelite (the guardian) thereafter concluded that it was in Nikmanis's best interests to sell the Brick Township property and engaged Sea Point as his listing agent. Sea Point received a number of offers, and the guardian thereafter filed an action in the Probate Part, pursuant to R. 4:94-1 to -7, seeking approval to sell the property to the Meyers.
In his verified complaint, the guardian alleged that the property was purchased by Nikmanis in 1999 for $113,000 and was unencumbered. He asserted that the Meyers' offer was the highest and urged its approval. As more fully explored later, the guardian's papers did not make clear the existence of a relationship between the Meyers and Sea Point. And, because of the limited class of persons given notice of the application, the application went unopposed and was apparently not further scrutinized by the Probate judge, who granted the guardian's application without explanation.[1]

B. The Proceedings in the Law Division
Upon learning of the Probate judge's determination, plaintiffs commenced this Law Division action  against the guardian, the Meyers and Sea Point  seeking damages based upon what they claim, among other things, was a fraudulent scheme to discourage buyers and to make the property available to the Meyers at the lowest possible price. Plaintiffs asserted: that the guardian's submission to the Probate judge was inadequate and failed to disclose the Meyers-Sea Point relationship; that the guardian's failure to give notice to them and the other disappointed offerors of the probate proceedings precluded deeper scrutiny of the guardian's submission; and that the Meyers, in their role as listing agent, discouraged potential purchasers by indicating that the property had many problems as a way of keeping down the amount of any bids received.
By way of separate motions, all defendants obtained summary judgment. The Law Division judge essentially based his rulings on the fact that plaintiffs never entered into an enforceable contract with the guardian, and that plaintiffs had no standing to be heard in the Probate Part, or, stated another way, that the Probate judge's approval of the sale of the property to the Meyers was conclusive.

II
There is no dispute that the Meyers were then and are now the principals of Sea Point. There is also no dispute that Sea Point was retained by the guardian to be the listing agent on this property. In examining these facts in the light required by the Brill[2] standard, we are satisfied that it would have been of great interest to the Probate judge at the time she considered the guardian's sale of the property to the Meyers to know that the Meyers were the principals of Sea Point. By entering into a listing agreement with the guardian, Sea Point and its representatives entered into a fiduciary relationship that required the "exercise [of] fidelity, good faith and primary devotion to the interests of [their] principal." Exit A Plus Realty v. Zuniga, 395 N.J.Super. 655, 664, 930 A.2d 491 (App.Div.2007) (quoting Ellsworth *689 Dobbs, Inc. v. Johnson, 50 N.J. 528, 553, 236 A.2d 843 (1967)).
Rule 4:94-3 authorizes a Probate judge to permit a sale of an incapacitated person's property if "the court is satisfied that the best interests of the ward would thereby be substantially promoted." In her role of protector of the interests of the incapacitated person in this instance, it no doubt would have been important to the Probate judge to know that the principals of the listing agent were the proposed purchasers. Although we may assume that relationship alone might not have been cause to completely disqualify the Meyers as purchasers  an issue we need not decide  the situation certainly warranted further scrutiny. A fair reading of the record before the Probate judge indicates that the guardian failed to adequately disclose this information to the Probate judge and strongly suggests that the Probate judge ruled on the application without knowledge of the Meyers-Sea Point relationship.
In applying to the Probate judge for approval of the sale, the guardian claimed that he spoke with "several realtors" and then "listed the property for sale." His complaint did not mention that Sea Point was the listing agent or that the Meyers were the principals of Sea Point. The guardian's moving certification similarly failed to adequately reveal the relationship between the Meyers and Sea Point. Following his description of the parties, the property, and his reasons for selling, the guardian only set forth the following in his certification regarding the offers received and the reason why he believed it advantageous to sell to the Meyers:
After speaking with several realtors, and with Alfreds himself, I listed the property for sale, and I received several offers. The proposed contracts are attached as Exhibit B. They show offers of $236,000, $235,500, $210,000, $241,900 (subject to a $218,000 mortgage contingency), & $200,000. Based upon all of the offers, I believe that the offer of $236,000 from Thomas & Patricia Meyer was the most advantageous, and I ask the Court to approve this contract. I note that Patricia Meyer is a realtor, and she is the proposed buyer as well. Her proposed contract is 100% as-is, and I will not need to make any repairs of any kind. Given the fact that the house has been vacant for some time, the house would otherwise be in need of substantial repairs, as can be seen from the terms of some of the other offers.
. . . .
I ask the Court to approve the Meyer contract for sale as-is at $236,000.
[Emphasis added.]
As can be seen, the guardian indicated only that Patricia Meyer was "a" realtor; he did not state that she was "the" realtor involved in marketing this property.
To inhibit further inquiry, the guardian did not give notice of the application to any of the individuals who had an interest in contesting whether the guardian's decision to sell to the Meyers was appropriate. The order to show cause entered by the Probate judge at the outset required that the guardian give notice to "any interested party." The guardian apparently interpreted this to mean that notice should be given only to the Meyers, the ward, and the attorney appointed to represent the ward in the proceedings that led to the guardian's appointment. The disappointed offerors on the property were not notified  not surprisingly, no opposition was filed.
Without objection from these other interested persons, it appears that the guardian's superficial certification went unexamined in the Probate Part. It has been argued that the proposed contract *690 attached to the certification resolves all doubts on the point and reveals the connection between the Meyers and Sea Point. Although there is a provision in the contract that reveals this connection, we are not satisfied that this sufficiently informed the Probate judge of a circumstance that was highly significant to her determination of whether this transaction was in the incapacitated person's best interests.
The contract identifies the purchasers of the property as "Thomas Meyer and Patricia Meyer," and gives what we assume was the address of their residence. Later in the contract, Sea Point's address is identified as 1773 Route 88, Brick, an address different from the address given in the contract for the Meyers. Thus, a cursory examination of the contract, limited to the identity of the purchasers and the identity of the listing agent, would fail to suggest a relationship between the Meyers and Sea Point. Instead, the only indication of their relationship appears on the sixth page of the single-spaced contract, where it is stated in paragraph 29: "Sea Point Realty . . . and Patricia Meyer . . . as its authorized representative(s), are working on this transaction as . . . seller's agents." Sea Point and the Meyers are correct that their relationship is thus revealed by this attachment to the guardian's certification. But, considering the lack of opposition to the application, it seems to us unlikely that the Probate judge was aware of this brief passage in the contract. It certainly was not highlighted for the judge in the papers submitted by the guardian. And the Probate judge's treatment of the application without a hearing or further inquiry suggests that the judge was understandably unaware of the Sea Point-Meyers' relationship.
In addition, because of the failure to highlight the Meyers' relationship to Sea Point, the Probate judge may have labored under a misunderstanding about the amount of their offer. The guardian's certification asserts that other than plaintiffs' $241,900 offer, which was viewed as less desirable because of a mortgage contingency, the Meyers' all-cash offer of $236,000 was the highest and best. The Meyers' contract, which is attached to the guardian's certification, in fact indicates $236,000 as the purchase price, but it also reveals that Sea Point was entitled to be paid  by the seller  a 5% commission. According to a HUD statement prepared for that subsequent transaction, Sea Point actually received that 5% commission $11,800  from the seller's funds at closing. As a result, the property did not cost the Meyers $236,000, as suggested to the Probate judge. Instead, the Meyers paid $236,000 and their real estate agency received back $11,800; in essence, defendants expended only $224,200 to obtain this property. This would have been an important fact for the guardian to disclose in his certification. Had the Probate judge been aware of this, she may have viewed the Meyers' offer differently and may have concluded that the marketing process was unfairly skewed to serve the Meyers' interests in the property.[3] That is, in light of the benefit the Meyers received from their entitlement to a commission, they essentially had an approximate $11,800 "leg up" on their competition.
In short, it cannot be disputed that it was important for the Probate judge to know of Sea Point's alleged self-dealing in *691 this matter. See Exit A Plus Realty, supra, 395 N.J.Super. at 664, 930 A.2d 491; R. 4:94-3. The certification submitted by the guardian in seeking approval for the sale to the Meyers is somewhat disingenuous, leaving it to only the most careful reading of the attached contracts to learn of the relationship between the Meyers and Sea Point  a fact that would have been highlighted in a candid certification.
In light of these circumstances, the Law Division judge  in considering the motions for summary judgment filed by these defendants  was obligated by the Brill standard to assume that defendants had failed to adequately reveal relevant and material information in order to gain approval for a transaction that may have otherwise not passed muster with the Probate judge.

III
Notwithstanding this analysis of the record in the probate proceedings, it has been argued to us that what occurred in the Probate Part is of no moment because plaintiffs had no standing to be heard there. For present purposes we may assume the truth of the argument that in a situation like this, a guardian is not obligated by statute or rule to give notice to unsuccessful offerors, such as plaintiffs. That does not, however, give license to conceal or to fail to thoroughly and candidly advise the court of relevant information.
Although the court rules may not be entirely clear about who is entitled to notice when there is competition for property that a guardian proposes to sell,[4] experience suggests that the better practice has been to give notice of applications for the approval of transfers to all potentially interested persons, including unsuccessful offerors.[5] In considering the motions for summary judgment in this case, the Law Division judge should have viewed the lack of notice to plaintiffs and other offerors of the probate proceedings as supporting an adverse inference about the bona fides of the guardian's request for approval of the sale.[6]
For these reasons, we find no substance in the argument that plaintiffs' alleged lack of standing in the Probate Part somehow insulates the Probate judge's approval of the sale to the Meyers from further scrutiny by way of plaintiffs' action for damages against both the Meyers, Sea Point and the guardian.

IV
As we have observed, the Law Division judge's decision to grant summary judgment in favor of defendants was based only on his conclusion that plaintiffs never entered into a contract with the guardian for the purchase of this property. That factual conclusion is unimpeachable and certainly warrants dismissal of plaintiffs' breach of contract claim, but it does not conclude the matter. The essential thrust of plaintiffs' complaint is their claim of fraud and tortious interference with a prospective economic advantage, which bespeak the absence of an enforceable contract. That is, those claims do not require *692 proof of a contract, but instead are based on the allegation that plaintiffs were precluded from entering into a contract by the wrongful actions of defendants.[7] The written decision rendered by the Law Division judge on September 25, 2006 certainly contains adequate support for the dismissal of plaintiffs' breach of contract claim, but it has no ostensible bearing on the remainder of the complaint.
We also discern from the oral argument on these motions that the Law Division judge may have believed the Probate judge's ruling was unimpeachable and that he was required to defer and assume that the Meyers were the legitimate purchasers of this property. Any such conclusion is, at best, arguable and certainly not so clear as to permit the entry of summary judgment. Indeed, in considering the remaining counts of the complaint following our remand, the trial judge should not assume that plaintiffs are precluded by the probate proceedings if for no other reason than plaintiffs were not parties to the probate proceeding and, thus, "did not have a `full and fair opportunity' to litigate the issue in the earlier case." Allen v. McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313 (1980) (citation omitted); see also Biddle v. Biddle, 166 N.J.Super. 1, 5, 398 A.2d 1297 (App.Div.1979). Moreover, as we have indicated, the Probate judge's decision may have rested on misinformation  yet another reason to deny it the preclusive effect normally associated with final judgments. See Restatement (Second) of Judgments §§ 28, 29 (1982).
During the colloquy between the Law Division judge and counsel it also appears that the judge was critical of plaintiffs' failure to come forward with greater proof of the fraud or conspiracy they were asserting. On remand, the judge must remain mindful that an alleged victim of fraud rarely has access to that type of information. See, e.g., Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J.Super. 369, 383, 164 A.2d 607 (App.Div.1960). It was enough, at the summary judgment stage, that plaintiffs were able to demonstrate that the relationship between the Meyers and Sea Point was inadequately disclosed to the Probate judge. Plaintiffs could not have been expected at that stage  at least when it appears that discovery had not been completed  to provide certifications about the actual terms of the alleged conspirators' agreement. Victims of fraud rarely have access to the inner-workings of their adversaries' minds. See Wilson v. Amerada Hess Corp., 168 N.J. 236, 253-54, 773 A.2d 1121 (2001).
And, lastly, Sea Point and Meyers have argued on appeal that their motion for summary judgment went unopposed. It is true that this was the status of the motion when it first was heard by the trial judge. *693 Counsel for plaintiffs at that time argued that his earlier papers  we assume he was referring to plaintiff's opposition to the guardian's motion for summary judgment  sufficed to defeat the other defendants' motion for summary judgment. But the trial judge correctly disagreed and appropriately adjourned the motion in order to permit the filing of proper opposing papers. Plaintiffs took advantage of this opportunity and filed a certification in which the questions surrounding the probate proceeds were summarized; the certification further asserted that Sea Point had acted unethically and that pretrial discovery had not been concluded, thus challenging the propriety of summary judgment. In short, we find no substance to the argument that the motion of Sea Point and Meyers was unopposed because the record on appeal contains an opposing certification and the Law Division judge did refer to and consider it in ruling on the motion.[8]

V
For these reasons, we affirm only those parts of the orders under review that dismissed, by way of summary judgment, plaintiffs' breach of a contract claim. We reverse in all other respects and remand for further proceedings in conformity with this opinion.
We do not retain jurisdiction.
NOTES
[1] The record on appeal does not contain a transcript of any proceedings the Probate judge may have conducted in ultimately determining to approve the sale, and the order entered at the time does not indicate the existence of either an oral or written decision.
[2] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
[3] We recognize in this regard that any other purchaser would have likely been obligated to pay this commission to Sea Point as well, thus netting to the ward's estate the same amount. But the fact remains that Sea Point was entitled to a 5% commission, and, as a result, the Meyers gained a distinct advantage over their competition for this property.
[4] Rule 4:94-2, which indicates the circumstances that would permit a guardian to sell a ward's property, does not define the class of persons entitled to notice except to indicate that the ward need not be given notice unless the court otherwise orders.
[5] Practitioners often give notice to disappointed offerors for no other reason than to insulate the transaction from future claims by those parties.
[6] We would respectfully suggest that the Civil Practice Committee consider examining the feasibility of a rule change to avoid potential circumstances such as that which may have occurred here.
[7] For example, the claim that Sea Point and the Meyers tortiously interfered with plaintiffs' prospective economic advantage, in these circumstances, is dependent upon proof that plaintiffs did not enter into a contract with the guardian. Plaintiffs did not need to prove an enforceable contract on this claim but instead needed only to show that they were in pursuit of an economic advantage, which was intentionally and with malice interfered with by the defendant, that the interference caused the loss of the prospective gain, and that they were damaged. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751-52, 563 A.2d 31 (1989). In addition, we discern from plaintiffs' complaint and their submissions in the Law Division and in this court, that they are arguing, somewhat inartfully, that a bidding process was generated with regard to this property. A party that loses such a contest is not foreclosed from arguing the process was infected with fraudulent conduct and such a claim may be actionable pursuant to the Consumer Fraud Act. See Jackson v. Manasquan Savings Bank, 271 N.J.Super. 136, 638 A.2d 165 (Law Div.1993).
[8] In finding no merit in plaintiffs' arguments, the Law Division judge in a very brief oral decision rejected plaintiffs' contention that Sea Point was plaintiffs' agent. That conclusion was certainly supported by the record but it was not conclusive on the other arguments raised by plaintiffs.