**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3501-15T2

ROBERT BORTECK,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

THOMAS N. TORZEWSKI,

    Defendant/Third-Party Plaintiff-
    Appellant/Cross-Respondent,

and

JENNIFER L. MCINERNEY,

    Defendant,

v.

ROBERT D. BORTECK, PC,

    Third-Party Defendant-Respondent/
    Cross-Appellant.

_____

        Submitted September 11, 2017 — Decided September 25, 2017

        Before Judges Messano and O'Connor.

        On appeal from Superior Court of New Jersey,
        Chancery Division, General Equity Part,
        Essex County, Docket No. C-0006-13.

Thomas N. Torzewski, LLC, attorneys for appellants (Jennifer L. McInerney, of counsel and on the brief).

Nagel Rice, LLP, attorneys for respondents/cross-appellants (Jay J. Rice, of counsel and on the brief; Randee M. Matloff, on the brief).

PER CURIAM

Plaintiff/third-party defendant Robert Borteck and defendant/third-party plaintiff Thomas Torzewski practiced law in the same law firm.[1] Defendant asserted he was an equity partner in the firm. Plaintiff disputed that contention and, after the parties filed competing motions for summary judgment on this question, the court determined defendant was not an equity partner. Defendant appeals from the March 11, 2016 order memorializing that decision, as well as from another provision establishing defendant's compensation as a non-equity partner. We affirm.

Plaintiff cross-appeals from a provision in the order compelling him to reimburse defendant $9,950 in FICA taxes defendant paid on plaintiff's behalf. We affirm this provision as well.

---

[1] For simplicity, we refer to Borteck as plaintiff and Torzewski as defendant for the balance of the opinion. Defendant Jennifer L. McInerney was dismissed from this matter on summary judgment, a decision that is not at issue in this appeal.

We recount each party's version of the material facts, starting with defendant.  In February 2010, defendant joined plaintiff's firm as a non-equity partner.  Defendant brought with him a number of clients and acquired a one-percent capital interest in the firm, and the firm was renamed Borteck, Sanders & Torzewski, LLP.  However, only plaintiff was an equity partner.  Defendant did not seek to be an equity partner when he joined because his relationship with plaintiff was still in its early stages.

In 2011, Sanders left the firm, which was promptly renamed Borteck & Torzewski, LLP.  Defendant continued as a non-equity partner for the rest of that year.  In his motion papers, defendant claimed he became an equity partner in 2012; the record does not provide any details of the circumstances under which plaintiff agreed defendant would be an equity partner. Defendant did admit the parties never agreed upon the terms of their partnership arrangement.

The only evidence upon on which defendant relied in support of his claim he became an equity partner was the firm issued to him a schedule K-1 form for tax year 2012, and it commenced paying for his health insurance.  The K-1 form indicates

A-3501-15T2

defendant received $233,326 in calendar year 2012, which was 23.8% of the firm's net profits. For tax years 2010 and 2011, when he was undisputedly a non-equity partner, the firm issued defendant a W-2 form for each year.

In addition to receiving the K-1 form and health insurance from the firm, defendant contended the following privileges or responsibilities were indicia signaling he was an equity partner. These indicia were he: (1) had the authority to sign checks and contracts on behalf of the partnership; (2) had complete access to all financial information of the partnership; (3) was a co-trustee of the partnership's 401k; (4) possessed and used a partnership credit card; and (5) was involved in management decisions of the firm, such as hiring and establishing the salaries of employees, purchasing equipment, and negotiating the terms of an office lease. Significantly, we note it is not contested defendant had these same privileges and responsibilities when even he admits he was a non-equity partner.

In December 2012, the parties met to discuss year-end bonuses and compensation. Because he had originated one-third of the firm's net profits that year, defendant proposed he get one-third and plaintiff two-thirds of the firm's net income. Plaintiff rejected this proposal and countered with a separation

agreement. By the end of the month, the partnership ended and defendant left the firm. Litigation ensued shortly thereafter.

B

Plaintiff asserted defendant never became an equity partner. According to him, in January 2012, defendant approached plaintiff and inquired whether he could acquire an equity interest in the firm. Plaintiff replied the issue could be addressed at a later time but, in the meantime, the compensation agreement into which the parties entered when defendant started with the firm remained in place.

That compensation agreement, the terms of which were set forth in a series of emails exchanged between the parties, was that defendant was to receive an annual base salary of $260,000, conditioned on him generating working attorney receipts of $525,000. If defendant failed to meet such goal, his compensation was to be reduced by $3,000 for every $10,000 he failed to attain $525,000 in receipts. Defendant was also entitled to certain conditional bonuses and perquisites.

Then, in December 2012, defendant announced to plaintiff he became an equity partner as of January 1, 2012, and inquired what his 2012 compensation would be. Plaintiff disputed defendant was an equity partner and, a few days later, plaintiff presented defendant with a separation agreement. Plaintiff did

not want defendant in the firm because of his claim he was an equity partner when he was not. Defendant refused to sign the agreement and left the firm days later.

Plaintiff acknowledged defendant received a K-1 form for tax year 2012, but explained defendant did so at his own request, preferring to receive his full salary and to be responsible for paying his own taxes. In addition, the firm's accountant recommended defendant be issued a K-1 form so the partnership, which required at least two individuals to survive, could continue. Otherwise, plaintiff would have been forced to create a corporation.

Plaintiff acknowledged the 2012 K-1 form reflected a profit distribution or draw of $233,326 and that this latter figure was 23.8% of the firm's net income. However, the sum of $233,326 was not in fact tied to or calculated upon the firm's net income. This sum was merely defendant's salary for 2012, the same salary he received the previous two years and was based upon defendant's compensation agreement. Knowing defendant's annual salary, the accountant determined $233,326 was 23.8% of the firm's net income, and entered these two figures on the K-1 form, accordingly.

A-3501-15T2

The court found there were no material issues of fact in dispute, see R. 4:46-2(c), and determined the absence of a partnership agreement providing defendant was an equity partner and the terms of the agreement was fatal to defendant's claim. The court thus granted plaintiff's and denied defendant's motions for summary judgment. The issues remaining after these motions were decided were the amount of compensation owed to defendant in 2012, and whether he was entitled to the return of $9,950 FICA taxes defendant paid in 2012, which plaintiff as an employer was obligated to pay.

The parties were unable to settle these remaining disputes and the court conducted a bench trial. During the trial plaintiff claimed defendant's compensation was as outlined in the emails exchanged between the parties. Defendant challenged this contention, and alleged the parties agreed he would receive an annual salary of $254,000, a discretionary bonus, an annual car allowance of $6,000, and the payment of certain miscellaneous expenses, such as Bar Association dues.

At the conclusion of the trial, the court found the emails comprised the parties' agreement on defendant's compensation, and determined plaintiff owed defendant $3,282 in additional pay. Further, the court found plaintiff owed defendant $9,950

for a portion of FICA taxes defendant paid in 2012 that were, as employer, plaintiff's obligation to pay.

II

On appeal, defendant's principal challenges are: (1) he established under the Uniform Partnership Act (UPA), N.J.S.A. 42:1A-1 to -56, that he became an equity partner in 2012; (2) he established under the common law he was an equity partner; (3) the court failed to appreciate there were material issues of fact that precluded summary judgment; (4) there was insufficient evidence the emails exchanged between the parties comprised their agreement on defendant's compensation as a non-equity partner; and (5) even if the emails did contain the terms of the parties' agreement, the court failed to properly apply those terms.

In his cross-appeal, plaintiff asserts the court erred when it determined he owed defendant $9,950 for FICA taxes.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). When deciding a summary judgment

motion, the court "must accept as true all evidence which supports the position of the party defending against the motion and accord him the benefit of all legitimate inferences which can be deduced therefrom." Id. at 535 (internal quotation marks omitted). If reasonable minds could differ, the motion must be denied. Ibid. Raising mere issues of fact is insufficient to defeat a motion for summary judgment. In order to defeat an adversary's motion for summary judgment, a party must offer facts in opposition that are material. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954). Disputed issues that are of an insubstantial nature cannot overcome a motion for summary judgment. Brill, supra, 142 N.J. at 530. If the moving papers show there is no material issue of fact, then summary judgment can be granted. Judson, supra, 17 N.J. at 75. We review the trial court's grant of summary judgment de novo, employing the same standard used by the trial court. Davis v. Devereux Found., 209 N.J. 269, 286 (2012).

The burden of proving a partnership is on the party asserting its existence. See Fenwick v. Unemployment Comp. Comm'n, 133 N.J.L. 295, 300 (E. & A. 1945). We first address defendant's claim he established he was an equity partner under the UPA and, thus, his motion for summary judgment should have been granted and plaintiff's motion denied. Defendant relies

upon certain language in three provisions of the UPA. These are N.J.S.A. 42:1A-10(a), N.J.S.A. 42:1A-10(c)(3), and N.J.S.A. 42:1A-21(b). We address each provision and why none is availing to defendant.

The language upon which defendant relies in N.J.S.A. 42:1A-10(a) states, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." (emphasis added). Here, there is no evidence plaintiff and defendant were ever co-owners of the firm. Although he acquired a capital interest of one-percent in the firm when he joined, that interest did not make defendant a co-owner. After all, as even he concedes, defendant was a non-equity partner in 2010 and 2011 despite that minimal acquisition, and there is no evidence he later acquired a greater ownership interest in the firm.

The particular language in N.J.S.A. 42:1A-10(c)(3) defendant claims supports the premise he was an equity partner states, "[a] person who receives a share of the profits of a business is presumed to be a partner in the business[.]" However, there is no evidence defendant was entitled to or received a share of the profits.

In addition to some perquisites, defendant received compensation in accordance with an agreement that based his pay

upon a fixed formula that was tied to his and not the firm's performance. His compensation was neither related to nor dependent upon the firm's profits or losses. To be sure, defendant was paid out of firm's profits, but there was no agreement defendant was entitled to receive a share of those profits. Defendant received his compensation in accordance with an employment agreement he entered into with an equity partner of the firm, not as a consequence of an agreement that permitted him to share in and receive the firm's profits.

Further, the fact defendant received a K-1 form in 2012 did not create a genuine issue of material fact that is sufficient to defeat plaintiff's motion for summary judgment. Defendant continued to be compensated in accordance with the agreement the parties had entered in 2010. The percentage of income set forth on the K-1 form as defendant's "draw" was deliberately calculated to be consistent with the salary defendant received pursuant to the parties' 2010 compensation contract. Further, there was no evidence defendant shared in the firm's profits — other than as any other creditor of the firm — or losses.

Finally, defendant relies upon N.J.S.A. 42:1A-21(b), which provides, "[e]ach partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the

profits." This provision governs when there is a partnership agreement. Because defendant did not establish there was such an agreement, this provision is not implicated.

Defendant next asserts, under the common law, he established he was an equity partner. The parties are in accord the UPA is not the exclusive authority governing when a partnership is formed, that resort to the common law is permitted to determine a party's relationship to a partnership. Both parties rely upon Fenwick, supra, 133 N.J.L. 295.

In this matter, our then highest court established the factors that are to be considered when determining whether one is an equity partner in a partnership. See id. at 297-300. These factors are: (1) the intention of the parties; (2) the sharing of the partnership's profits; (3) the sharing of the partnership's losses; (4) the ownership and control of the partnership's property and business; (5) the "community of power in administration and the reservation in the agreement of the exclusive control of the management of the business"; (6) whether the language of the agreement excludes one party from "most of the ordinary rights of a partner"; (7) the conduct of the parties toward third persons, including taxing authorities, clients, and others; and (8) the rights of the parties on dissolution. Ibid.

After considering these factors, we reject defendant's contention he established he was an equity partner and, thus, the court erred when it granted plaintiff's but denied his motion for summary judgment. We briefly address these factors.

As for the intent of the parties, the record is devoid of any details about how defendant allegedly became an equity partner in January 2012. There is no evidence of the circumstances under which plaintiff allegedly assented to defendant acquiring an equity interest in the firm. Certainly, it is uncontested the parties never entered into an agreement setting forth the terms of the partnership arrangement.

Defendant's primary argument is the fact the firm issued the K-1 form to him and commenced paying for his health insurance constitutes evidence he became an equity partner. We previously addressed the weight to be accorded the K-1 form; in context, the K-1 is not evidential defendant became an equity partner in the firm. That the firm paid for defendant's health insurance is insignificant; providing such a benefit is often afforded to employees in the workplace. There is simply an absence of evidence plaintiff intended to make defendant an equity partner.

Turning to the second and third factors, there is no evidence defendant shared in the partnership's profits and

13                                        A-3501-15T2

losses.  As for the fourth and fifth factors, while defendant enjoyed certain privileges and had various administrative and managerial responsibilities, he had those same privileges and responsibilities when he was undisputedly a non-equity partner. The sixth factor is inapplicable because there was no partnership agreement.

As for the seventh factor, plaintiff concedes defendant was held out as a partner; however, there was no evidence defendant was held out as an equity partner to the public.  The final factor, the rights of the parties on dissolution, does not apply as there was no agreement.

After analyzing these factors, none of which supports defendant's position but for, arguably, the seventh one, we are satisfied the court did not err because it failed to find defendant to be an equity partner under the common law, and thus granted summary judgment in plaintiff's favor.

We have examined defendant's remaining arguments, as well as plaintiff's arguments in support of his cross-appeal, and determine they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                          A-3501-15T2