**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3593-16T4

MAURICE R. GRASSIA,
JR., Executor of the Estate
of ELIZABETH K. GRASSIA,
on behalf of All Wrongful Death
and Survival Action Claimants,

      Plaintiff-Appellant,

v.

UNDERWOOD MEMORIAL
HOSPITAL, INSPIRA MEDICAL
CENTER WOODBURY, INC.,
INSPIRA HEALTH NETWORK,
INSPIRA HEALTH NETWORK,
INC., INSPIRA HEALTH
PARTNERS, LLC, INSPIRA
HEALTHCARE, LLC, INSPIRA
MEDICA CENTER WOODBURY,
INSPIRA MEDICAL CENTERS,
INC., SOUTH JERSEY HEALTH
SYSTEM SOUTH JERSEY
HEALTHCARE, UNDERWOOD
MEMORIAL HEALTH SYSTEMS
INC., UNDERWOOD MEMORIAL
HOSPITAL INC., UNDERWOOD
MEMORIAL HOSPITAL-HEART
CENTER, UNDERWOOD

MEMORIAL HEALTH SYSTEM, UNDERWOOD MEMORIAL HEALTH SYSTEMS, INC., UNDERWOOD MEMORIAL HOSPITAL, LOURDES HEALTH SYSTEM, LOURDES SPECIALTY HOSPITAL OF SOUTHERN NEW JERSEY, LLC, INSPIRA CARDIOVASCULAR SERVICES, OWENS, VERGARI UNWALA, CARDIOLOGY ASSOCIATES, WOODBURY MEDICAL CENTER; SOUTH JERSEY FAMILY MEDICINE; MICHAEL A. ROGERS, M.D., P.A., PULMONARY AND SLEEP ASSOCIATES OF SOUTH JERSEY, LLC, MARTIN S. DAWSON, M.D., MARCUS MAGNET, M.D., KURT W. KAULBACK, M.D., and IRA D. HOROWITZ, M.D.,

      Defendants,

and

OUR LADY OF LOURDES MEDICAL CENTER, INC., OUR LADY OF LOURDES HEALTH CARE SERVICES, INC., OUR LADY OF LOURDES HEALTH SYSTEM, OUR LADY OF LOURDES MEDICAL CENTER; NICHOLAS ROY, M.D., and KAHYUN YOON-FLANNER, M.D.,

Defendants-Respondents.

_____

Submitted October 23, 2018 – Decided December 4, 2018

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2024-14.

Langsam Stevens Silver & Hollaender, LLP, attorneys for appellant (Denise A. Kuestner, on the brief).

Stahl & DeLaurentis, PC, attorneys for respondents Our Lady of Lourdes Medical Center, Inc., Lourdes Health System, Our Lady of Lourdes Healthcare Services, Inc., Our Lady of Lourdes Health System, and Our Lady of Lourdes Medical Center (Sharon K. Galpern, on the brief).

Marshall Dennehey Warner Coleman & Goggin, attorney for respondents Nicholas Roy, M.D., and Kahyun Yoon-Flannery, M.D. (Walter F. Kawalec, III, on the brief).

PER CURIAM

In this medical malpractice action, plaintiff appeals from Law Division orders barring his expert from testifying as to the standard of care and granting the summary judgment dismissial of the wrongful death and survival claims relating to the death of his wife, Elizabeth Grassia (decedent). We affirm.

I

These are the most pertinent facts. From April 14 until April 20, 2012, decedent – then sixty-five years old – received treatment at Underwood Memorial Hospital (Inspira) for congestive heart failure and acute coronary syndrome; her medical history included non-insulin dependent diabetes, high blood pressure, high cholesterol, and pneumonia. After doctors diagnosed decedent with severe right coronary artery stenosis and a non-ST-elevation myocardial infarction,[1] she underwent coronary angiography, balloon angioplasty, and stenting of the right coronary artery. On April 21, 2012, decedent required resuscitation after nurses found her unresponsive and in respiratory arrest. Decedent was revived and discharged with a diagnosis of non-ST-elevation myocardial infarction, congestive heart failure, coronary artery disease, high blood pressure, and chronic obstructive pulmonary disease.

Decedent returned to Inspira on May 20, 2012 with acute shortness of breath and acute pulmonary edema, requiring a ventilator. Inspira transferred

_____

[1] A heart attack occurs when one or more coronary arteries become blocked. A patient may have a complete blockage or partial blockage. A complete blockage means the patient had an ST elevation myocardial infarction (STEMI). A partial blockage means the patient had a non-ST elevation myocardial infarction (NSTEMI). Heart attack – Symptoms & causes, MAYO CLINIC (May 30, 2018), https://www.mayoclinic.org/diseases-conditions/heart-attack/symptoms-causes/syc-20373106.

A-3593-16T4

her to defendant Our Lady of Lourdes Medical Center, Inc. (the Hospital) on May 24, 2012, for percutaneous coronary intervention (nonsurgical treatment of narrowing coronary arteries). She remained there until her death on May 27. Decedent received care from various physicians in the Hospital, including defendant Kahyun Yoon-Flannery, M.D., an intern, and Nicholas Roy, M.D., a resident.

Plaintiff's theory in the case was that defendants administered Lopressor to decedent despite the fact her unstable decompensated heart failure with pulmonary edema constituted a contraindication for the drug. The Lopressor, along with inappropriate administration of heparin, substantially contributed to decedent's cardiac arrest on May 26, and her death the next day.

In 2014, plaintiff filed this lawsuit against a multitude of parties, including Inspira, the Hospital, and various physicians, alleging that decedent died "from iatrogenic causes." In support of these claims, plaintiff retained the services of a cardiologist, Dean Kross, M.D., who provided an affidavit of merit stating that defendants' care "fell outside professional treatment standards." In February 2016, plaintiff served two medical expert reports, one from Dr. Kross, who provided standard of care opinions against defendants, and one from Dr. David Vearrier, M.D., who provided an opinion on causation based on the "medical

errors" and "inappropriate and inadequate medical therapy" performed on decedent. At the time defendants provided care to decedent, Dr. Vearrier was board certified in occupational medicine, medical toxicology, and emergency medicine.

Prior to his deposition, Dr. Kross withdrew as plaintiff's expert. A case management conference followed, resulting in an October 26, 2016 order giving plaintiff until January 9, 2017, to serve all expert reports; however, plaintiff did not serve any additional expert reports.

Instead of retaining a substitute expert for Dr. Kross, plaintiff attempted to proceed by having Dr. Vearrier serve as an expert who would address both causation and standard of care. Defendants previously deposed Dr. Vearrier in September 2016.

Upon learning of plaintiff's decision to use Dr. Vearrier as plaintiff's standard of care expert, all defendants in the case moved for summary judgment, claiming Dr. Vearrier did not have the qualifications to testify as to the standard of care based on the requirements under N.J.S.A. 2A:53A-41. Plaintiff only opposed the summary judgment motion as to Dr. Roy, Dr. Yoon-Flannery, and the Hospital. The claims against all other parties were dismissed without opposition.

Following oral argument, the motion judge held Dr. Vearrier did not qualify to testify as an expert on the standard of care. As a result, she dismissed the case against all defendants with prejudice. This appeal followed, with plaintiff challenging only the dismissal of his claims against the Dr. Roy, Dr. Yoon-Flannery, and the Hospital.

II

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). We "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any "special deference," and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016) (citation omitted).

To prove medical malpractice, the plaintiff must have expert testimony that establishes "(1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury."

A-3593-16T4

Gardner v. Pawliw, 150 N.J. 359, 375 (1997) (internal citations omitted). For residents and interns, the standard of care applicable is the same as that for a general practitioner. Clark v. Univ. Hosp.-UMDNJ, 390 N.J. Super. 108, 115 (App. Div. 2006).

Dr. Yoon-Flannery and Dr. Roy were an intern and resident respectively. Therefore, the standard of care applicable to each doctor is that of a general practitioner. See id. at 116. N.J.S.A. 2A:53A-41 establishes the requirements for any person giving expert testimony as to the appropriate standard of care. When testifying against a general practitioner:

> [T]he expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to:
>
> (1) active clinical practice as a general practitioner; or active clinical practice that encompasses the medical condition, or that includes performance of the procedure, that is the basis of the claim or action; or
>
> (2) the instruction of students in an accredited medical school, health professional school, or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed; or
>
> (3) both.
>
> [N.J.S.A. 2A:53A-41(b) (emphasis added).]

Therefore, in order to serve as plaintiff's standard of care expert, Dr. Vearrier needed to qualify under subsection one or two.

Dr. Vearrier is not a general practitioner, nor has he ever practiced as one. Rather, at the time relevant to this case, Dr. Vearrier held certifications in Emergency Medicine, Medical Toxicology, and Occupational Medicine. Therefore, to qualify under subsection one, Dr. Vearrier needed to have devoted a majority of his professional time, in the year prior to the relevant events, acting in a clinical practice that encompasses the medical condition or procedure at issue in the claim. N.J.S.A. 2A:53A-41(b)(1). Plaintiff failed to establish that Dr. Vearrier satisfied this criterion.

Decedent was admitted to the Hospital for "percutaneous coronary intervention." However, the conditions and procedures at issue involve the administration of Lopressor following the intervention procedure, which allegedly led to her cardiac arrest and thereby contributed to her death; the administration and failure to discontinue a heparin infusion after her cardiac arrest, which allegedly increased the risk of substantial hemorrhage and thereby contributed to her death; and the failure to discontinue the administration of Cardizem after decedent developed hypotension, which allegedly exacerbated decedent's hypotension and thereby contributed to her death. All of these

alleged deviations involve the management of a cardiac patient, post-procedure and post-stabilization following cardiac arrest. Plaintiff failed to demonstrate Dr. Vearrier devoted a majority of his professional time to active clinical practice that encompasses these medical conditions or their management.

In the year immediately preceding May 27, 2012, Dr. Vearrier worked as the Medical Toxicology Fellowship Director, the Medical Toxicology Clerkship Director, and briefly as a Clinical Assistant Professor at the Department of Emergency Medicine at Drexel University College of Medicine; a Medical Toxicologist Consultant for the Poison Control Center at the Children's Hospital of Philadelphia; and as Assistant Editor to www.ToxEd.com. During this time, Dr. Vearrier indicated his role as Clerkship Director put him "in charge of [medical students who take a medical toxicology clerkship's] education." Dr. Vearrier also indicated he is "in charge of the resident education medical toxicology. That includes the emergency medicine residents and . . . other residents who rotate throughout [the school's] service either as part of their training or as an elective." His role as the Fellowship Director involved "train[ing] medical toxicology fellows. Those are physicians who have already completed specialty training in pediatrics or emergency medicine or internal

medicine, who are now seeking fellowship status and subspecialization in medical toxicology."

In regards to his work on the emergency floor, Dr. Vearrier only began working part-time at Roxborough Memorial Hospital in 2014. Prior to that year, the last time he worked on the emergency floor was during his residency training in 2008. Despite this fact, in his certification submitted in opposition to summary judgment, Dr. Vearrier stated:

> Emergency Medicine covers treating a very wide range of diseases and trauma. I routinely in the year before May 26, 2012 treated patients for shortness of breath, cardiac insufficiency, cardiac arrest, hypotension, occult hemorrhage, adverse effects of anti-coagulants, and acutely decompensated congestive heart failure. In short, in that year I regularly and routinely provided treatments, administered drugs, and taught residents and medical students about all of the medical conditions I have addressed with respect to the treatment, or lack thereof, provided to Elizabeth Grassia at Lourdes after 8:00 pm on May 26, 2012 and on May 27, 2012.

While Dr. Vearrier stated he "routinely" and "regularly" treated patients that encompassed the medical condition at issue in the year prior to May 2012, he did not specify in what capacity he performed these duties. His certification appears to contradict his curriculum vitae and deposition testimony by insinuating he spent a majority of his time practicing emergency clinical work.

A-3593-16T4

He did not specify where he performed this clinical work. Plaintiff did not address this deficiency at the summary judgment hearing; instead, plaintiff merely reiterated Dr. Vearrier's statement in his certification as evidence of Dr. Vearrier's qualification.

Even assuming, arguendo, the accuracy of Dr. Vearrier's representation, his certification did not state that emergency medicine encompassed the majority of his professional time. While he may have "routinely" and "regularly" provided treatment related to the matters at issue in this case while working in emergency medicine, Dr. Vearrier did not state he devoted a majority of his professional time working in emergency medicine. In 2011, Dr. Vearrier's curriculum vitae indicated he held five different professional positions, two of which (Medical Toxicologist Consultant for the Poison Control Center at the Children's Hospital of Philadelphia, and Assistant Editor for [www.ToxED.com](www.ToxED.com)) would clearly not involve clinical work applicable to this case. Additionally, Dr. Vearrier only held the position of Clinical Assistant Professor in the Department of Emergency Medicine at Drexel University College of Medicine for a brief period of time during the year before the period relevant to this case (from April 2011 to July 2011).

A-3593-16T4

Therefore, this "regular" and "routine" clinical work would have to occur either in his work as the Medical Toxicology Fellowship Director or the Medical Toxicology Clerkship Director for the Division of Medical Toxicology in the Department of Emergency Medicine for Drexel University College of Medicine or both. However, there is no definitive statement as to where he performed his emergency medicine, nor that it occupied the majority of his professional time. As plaintiff carried the burden to show that Dr. Vearrier was qualified to testify as to the standard of care, it was not for the court to speculate or assume how Dr. Vearrier divided his professional time during the relevant time period.

For similar reasons, plaintiff failed to prove Dr. Vearrier qualifies under subsection two as an expert on standard of care. Under subsection two, "during the year immediately preceding the date of the occurrence that is the basis for the claim or action," the individual "shall have devoted a majority of his professional time to: the instruction of students in an accredited medical school . . . or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed."

At his deposition, Dr. Vearrier testified that he only gives approximately six lectures in a given year. Clearly, these lectures could not occupy the majority

A-3593-16T4

of his professional time; as a result, he did not satisfy the threshold requirement that he "shall have devoted a majority of his professional time" to the instruction of medical students. N.J.S.A. 2A:53A-41(b). While Dr. Vearrier served as both a Clerkship Director and a Fellowship Director, these were both residencies in medical toxicology. Therefore, this did not constitute the same health care profession as the defendants, who were neither boarded nor practicing as medical toxicologists. Thus, even if we were to assume that Dr. Vearrier spent a majority of his professional time teaching in these residencies, this would not qualify him as an expert on standard of care as it was not "in the same health care profession" as Dr. Roy or Dr. Yoon-Flannery. N.J.S.A. 2A:53A-41(b)(2).

Therefore, Dr. Vearrier's teachings and instruction of students in the residency programs did not qualify him to serve as a standard of care expert against defendants as they do not share the same health care profession.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                      A-3593-16T4