**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2496-17T3

CECILE PORTILLA,

    Plaintiff-Appellant,

v.

MAXIM HEALTHCARE
SERVICES, INC., DAWN
KENNY, LAURA RIDDLE,
and BARBARA VOLTA,

    Defendants-Respondents.

_____

Submitted March 13, 2019 – Decided August 20, 2019

Before Judges Nugent, Reisner and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6774-14.

Eldridge T. Hawkins, attorney for appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys for respondents (Thomas J. Rattay and Robin Koshy, on the brief).

PER CURIAM

Plaintiff, Cecile Portilla, appeals the summary judgment dismissal of her third amended complaint. The complaint alleged six causes of action: common law wrongful discharge (count one); constructive discharge (count two); breach of contract, including breach of the implied covenant of good faith and fair dealing and intentional interference with plaintiff's beneficial economic advantage (count three); "NJ Constitutional Violations" (count four); violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, including hostile work environment, retaliation, and aiding and abetting (count five); and handicap discrimination in violation of the LAD and other laws (count six). We affirm, substantially for the reasons expressed by Judge Dennis F. Carey III in his January 5, 2018 oral opinion. We add the following comments.

Plaintiff, a registered nurse and a lawyer, worked for defendant, Maxim HealthCare Services, Inc., as Director of Clinical Services (Director) for its South Orange office from April 8, 2013, through September 27, 2013, when she resigned, claiming she was constructively discharged. In their summary judgment motion's statement of material facts—which was fully supported with

record citations—defendants explained the events leading to plaintiff's resignation.[1]

According to defendants, plaintiff is a self-described "paradigmatic whistleblower." She had filed two previous employment complaints against previous employers, one of which was dismissed; the disposition of the other is unknown. When hired by Maxim, she did not fully disclose her previous employment.

When plaintiff was first hired, Maxim sent her to a four-day training program in Virginia and had her attend a ninety-day orientation program to learn Maxim's policies and procedures. Maxim also had plaintiff attend in-service training programs throughout her employment. Notwithstanding the training, plaintiff routinely failed to complete required weekly reports relating to: (1) tracking doctor's orders; (2) tracking when patients needed to be re-evaluated; (3) tracking employee requirements, such as dates CPR licenses would expire;

---

[1] Rule 4:46-2(a) requires the party moving for summary judgment to serve "a separate statement of material facts . . . [which] shall set forth in separately numbered paragraphs a concise statement of each material fact . . . together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." Rule 4:46-2(b) provides that those facts "sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact."

A-2496-17T3

and (4) tracking any patient issues, such as outstanding authorizations and the time supervisory visits were due. In addition, plaintiff was often absent from meetings she was scheduled to lead. Perhaps more significant, plaintiff was demeaning and disrespectful to other employees. She also failed to follow required policies and procedures.

Defendants Dawn Kenney and Laura Riddle, Maxim supervisory personnel, reassigned a number of plaintiff's responsibilities to others and attempted to coach and train her. When her performance did not improve, defendants placed plaintiff on a thirty-day Performance Improvement Plan (PIP). When her performance still did not improve, Kenney and Riddle decided to meet with plaintiff in person at the South Orange office. After Kenny arrived, she told plaintiff she had to park her car and would then return for the meeting. Plaintiff locked her office, exited through the building's back door, and never returned. Two days later, she sent a letter saying she had been constructively discharged.

Plaintiff alleged she was retaliated against for engaging in, among other conduct, filing internal compliance reports; filing reports with outside agencies; and complaining that a certain employee was underpaid. She claims the

retaliation included the withholding of a bonus. Defendants addressed in their statement of material facts each of plaintiff's allegations.

Plaintiff's job duties included reporting any compliance concerns or issues. In their statement of material facts, defendants summarized each compliance report plaintiff had filed during the course of her employment. They documented their thorough investigation and response to each report, including, in some instances, taking corrective action. Significantly, defendant never alleged in a compliance report that Maxim or its upper-level management had engaged in wrongdoing or knew of, authorized, participated in, or ratified any of the compliance violations plaintiff noted in her compliance reports.

Defendants noted plaintiff had filed four reports with the Division of Child Protection and Permanency and a report to the Inspector General. Not only was plaintiff required to report to the Division any instances of abuse or patient neglect, but in the instance of one report, personnel in Maxim's Compliance Department told plaintiff, "if this is an abuse, neglect, theft or exploitation matter, please report this matter immediately to [child protective services]." Plaintiff did not send a copy of her letter to the Inspector General to Maxim. Maxim knew nothing about it.

Plaintiff once complained that an employee who was not Caucasian was not being paid as much as a similarly-situated Caucasian employee. As it turned out, plaintiff did not know how much the Caucasian employee was being paid. Nevertheless, Maxim responded and resolved the issue.

Maxim also established in its record-documented statement of material facts that plaintiff had the same job duties as other Directors; plaintiff was not asked to perform duties not expected of other Directors; and in other offices, Directors performed more duties than plaintiff.

Plaintiff alleged that in retaliation for her engaging in the foregoing protected activities, she was harassed and a bonus was withheld. In their statement of material facts, defendants demonstrated plaintiff was not eligible for a bonus. Plaintiff further alleged the following retaliation: Maxim employees were very cold to her; she felt disrespected; she was not permitted to decide what duties nurses would perform; nurses bypassed her and reported to others instead; she was precluded from hiring additional staff; and she was placed on the PIP.

Defendants documented numerous interpersonal problems plaintiff had with other employees, including her demeaning and disrespectful attitude toward them. This caused others not to want to interact with her, and in one

instance, a supervisor reported she was resigning from Maxim because of the way plaintiff treated her.

Defendants also documented plaintiff was being treated for significant psychological issues, including a possible thought disorder and a delusional disorder. Medical records documented that plaintiff had "a suspicious demeanor and other signs of paranoid process." An independent medical examiner concluded plaintiff exhibited symptoms consistent with a diagnosis of a delusional disorder.

Plaintiff's response to defendants' eighty-nine paragraphs of material facts was non-compliant with Rule 4:46-2(b), mostly unsupported by citations to the record or competent evidence in the record. For example, in response to defendants' paragraph fourteen, which stated that plaintiff remained in the position of Director of Clinical Services only five and one-half months when she resigned and alleged she had been constructively discharged, plaintiff stated: "14. Denied that she remained in that position until Sept. 27, 2013, as she was terminated by defendant's [sic] before then. (See    )[.]" No citation is included in the parenthesis, yet plaintiff's response to the next eleven paragraphs, fifteen through twenty-six, is: "Admit objection, statement taken out of full content, same cite."

7

Plaintiff also submitted a 169-paragraph "Counterstatement of Material Facts Not in Dispute." Many of the facts were not material. Many that were material contained references to the record but the references did not support the facts asserted. Some contained no references to the record. Many others cited for support allegations in a proposed amended complaint containing plaintiff's conclusory allegations and other incompetent evidence.

We agree with the trial court that the evidence on the summary judgment motion was so one-sided that defendants had to prevail as a matter of law. Petro-Lubricant Testing Labs., Inc., 233 N.J. 236, 257 (2018); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Plaintiff's claims for wrongful discharge fail because, indisputably, plaintiff was not discharged; she resigned. Her claims for constructive discharge also fail, because plaintiff did not establish through competent evidence that the conduct of Maxim or its supervisory employees was "so intolerable that a reasonable person would be forced to resign rather than continue to endure it." Sheppard v. Hunterdon Developmental Ctr., 174 N.J. 1, 28 (2002) (quoting Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 428 (App. Div. 2001)).

Plaintiff's generic claims of "N.J. Constitutional Violations," as well as her generic allegations that her "rights to privacy, freedom of speech, property,

A-2496-17T3

equal protection, due process right to grieve, complain and petition for redress of grievance" also fail, because under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, a private cause of action only may be pursued against persons acting under color of law. Plaintiff has not demonstrated that either Maxim or its supervisory personnel were acting under color of law at the time of the events plaintiff complained of.

We have considered plaintiff's remaining arguments and determined they are without sufficient merit to warrant further discussions. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION