**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3971-21

IN THE MATTER OF THE
PETITION OF 68-72 FRANKLIN
PLACE, LLC, and THE VILLAGE
COURTYARD CONDOMINIUM
ASSOCIATION,

      Petitioners-Appellants,

v.

NEW JERSEY AMERICAN
WATER COMPANY,

      Defendant-Respondent,

_____

Submitted January 29, 2024 – Decided April 22, 2024

Before Judges Gilson and DeAlmeida.

On appeal from the New Jersey Board of Public Utilities, Docket No. 05592-21.

Connell Foley, LLP, attorneys for appellants (Robert L. Podvey, on the brief).

Archer & Greiner, PC, attorneys for respondent New Jersey American Water Company (Thomas J. Herten,

of counsel and on the brief; Lilli Barvara Wofsy, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Board of Public Utilities (Sara M. Gregory, Assistant Attorney General, of counsel; Steven A. Chaplar, Deputy Attorney General, on the brief).

PER CURIAM

Appellants 68-72 Franklin Place, LLC (Franklin) and The Village Courtyard Condominium Association (Association) appeal from the July 13, 2022 final agency decision of the Board of Public Utilities (BPU) denying without an evidentiary hearing their petition for relief from the tariff rate respondent New Jersey American Water Company (NJAW) charged them for water service at a residential development. We affirm.

I.

The following facts are derived from the record. NJAW is a public utility in the business of distributing water to customers in New Jersey and is subject to BPU's regulatory supervision and control. See N.J.S.A. 48:2-13(a). Franklin was the developer of twelve townhouse-style condominium units and two duplex homes in Summit (the project).

During the planning of the project, Joseph N. Davignon, an Engineering Project Manager for NJAW, engaged in ongoing communications with Gary W.

Szelc, Franklin's engineering representative, regarding the project's water service needs. It was determined that the four-inch water main in the area of the property needed to be upgraded to an eight-inch main.

Prior to November 16, 2017, it was intended that the project would be serviced by an eight-inch main, into a six-inch tap/connection line, into a six-inch meter, into two six-inch service lines. On November 16, 2017, however, Szelc informed Davignon via email that

> in discussions with the City of Summit fire officials we were directed to provide an [eight]-inch tap off of the proposed new [eight]-inch street main upgrade into the backflow preventer, from which two [six]-inch services would branch off to supply the project.
>
> We will be revising our plans accordingly and sending you a copy for your records.

When NJAW questioned the need to upgrade to an eight-inch tap/connection from a six-inch tap/connection, Szelc explained that fire officials were concerned that the number of housing units in the project could not be served by the proposed two hydrants connecting to the proposed six-inch tap/connection. Szelc stated that "running that short section of [eight]-inch across the street and then branching into the two [six]-inch services[,]" each with one hydrant, "would alleviate any concerns" of municipal fire officials.

A-3971-21

Emails exchanged between Franklin and its counsel acknowledged that monthly water service fees would increase as a result of upgrading from a six-inch tap/connection to an eight-inch tap/connection. Gerald Naylis, Franklin's fire consultant, wrote the following in an email to Franklin's counsel regarding the change in the tap/connection: "From a fire protection point of view that works. They may want a separate fire hydrant on each six-inch line. That may be a small price compared to additional delay." NJAW had no objection to the change in the size of the tap/connection, but advised Franklin that an eight-inch tap/connection would require installation of an eight-inch meter.

On November 29, 2017, Franklin submitted a new service application to NJAW, reflecting the change to an eight-inch meter and confirming that it "underst[ood] that these services are subject to the rates and conditions of the Water Company Tariff which is available . . . on the water company's website." At the time Franklin submitted the application for new service, the service charge for an eight-inch meter according to NJAW's BPU-approved tariff was $1,088 per month.

On December 19, 2017, Franklin signed an extension deposit agreement with NJAW that approved the change from a six-inch tap/connection to an eight-inch tap/connection.

4

The water service installation was completed on October 25, 2018, with the eight-inch tap/connect and meter installed in the right of way adjacent to the project. Because Franklin declined to grant NJAW an easement to install water lines down the two main driveways of the project, NJAW's installation of equipment was limited to the nearby right of way.

Franklin subsequently installed private facilities routing water to the project beyond NJAW's eight-inch meter. The private facilities include individual water lines connecting two buildings and individual water meters smaller than eight inches in each of the condominium units. The private facilities were not installed by NJAW and are not under its control. Pursuant to a BPU-approved tariff, NJAW's responsibility ends at the eight-inch meter it installed in the right of way.

The project was completed on June 15, 2019. The condominium units were sold to individual owners who comprise the Association.

On November 18, 2020, Franklin and the Association filed a petition with BPU, alleging: (1) NJAW made misrepresentations regarding the monthly rate for an eight-inch meter by stating that the difference between the rate for a six-inch meter and the rate for an eight-inch meter was minimal; (2) the eight-inch meter was unnecessary for the project and NJAW should have so advised

Franklin; and (3) the monthly charge for the eight-inch meter is unconscionable and resulted in excessive monthly water charges for the condominium unit owners. As of November 18, 2020, the monthly water service fee for the eight-inch meter at the project was $1,348, which results in a charge of more than $112 per month for each of the twelve condominium unit owners before consideration of water usage.[1]

Appellants requested BPU order NJAW to: (1) refrain from enforcing the tariff for the eight-inch meter at the project and to impose in its place a special rate pursuant to N.J.S.A. 48:2-21 and N.J.A.C. 14:3-1.3(d) because the tariff rate is unjust and unreasonable; or (2) replace the eight-inch meter with one more suitable for the project.

BPU transferred the petition to the Office of Administrative Law, where it was assigned to an Administrative Law Judge (ALJ). NJAW moved for summary decision. Relying on a certification from Davignon, NJAW argued there were no genuine disputes of material fact because the parties had executed a contract for an eight-inch tap/connection and meter at Franklin's request and the contract specified that the eight-inch meter was subject to the rates set forth

---

[1] The monthly rate for the eight-inch meter subsequently increased to $1,480.05 in a BPU-approved tariff rate increase.

6

in NJAW's tariff, which was available on NJAW's website. In addition, NJAW argued that there was no basis for relief pursuant to N.J.A.C. 14:3-1.3(d) because appellants did not allege that NJAW operated in violation of its tariff. Finally, NJAW argued that appellants were not entitled to relief pursuant to N.J.S.A. 48:2-21(b)(1) because the tariff provided in the contract did not result in an unjust and unreasonable rate for water service at the project and any change in the rate must be submitted to BPU in an executed contract prior to the effective date of the contract.

Franklin opposed the motion, arguing that disputed issues of material fact precluded summary decision. They contended that: (1) NJAW did not follow its "regulatory obligation" to assist customers with selecting the most favorable rate where more than one possible rate existed; (2) NJAW was not "hard pressed" to apply the rate in its tariff for an eight-inch meter; (3) many of the communications between Davignon and Szelc were oral and required an evidentiary hearing for findings of fact as to the contents of those communications; (4) Franklin was forced to agree to an eight-inch meter under

duress; and (5) the privately installed meters at the individual units could be used to determine the rate applied by NJAW for the project.[2]

In response, NJAW argued that it could not use the privately installed meters to determine the rate at the project because: (1) Franklin refused to grant NJAW an easement to install water lines down the two main driveways of the project, thus limiting NJAW's control over the water service to the eight-inch tap/connection and meter in the right of way adjacent to the project; (2) NJAW's customer is Franklin and not the individual condominium unit owners; and (3) NJAW has no control over or responsibility for the privately installed meters.

After oral argument on the motion, the ALJ requested supplemental briefing addressing: (1) whether Franklin had standing to challenge the rates charged for the eight-inch meter, given that the fees were being passed on to the Association members; (2) whether NJAW had the authority to forgive past charges previously assessed in accordance with its tariff; and (3) the legal effect, if any, of the Association's lack of participation in the BPU proceedings.

On May 12, 2022, the ALJ issued an initial decision granting NJAW's motion for summary decision and denying Franklin's request for relief. As an

---

[2] Franklin's opposition brief stated that the Association had retained separate counsel and was not participating in the proceedings before the BPU.

A-3971-21

initial matter, the ALJ found that the Association was an interested party that elected not to prosecute its interests before the BPU, despite having a full and fair opportunity to do so. As a result, the ALJ concluded, the Association would be bound by the conclusions reached on the petition filed by Franklin, which had standing to challenge the rates charged for water service at the project.

The ALJ found there were no material facts genuinely in dispute between the parties, allowing for a summary decision on Franklin's petition. The ALJ found that it is undisputed that "both sides were sophisticated businesses, and both were represented by counsel and professionals during the pre-construction negotiations" and entered into a contract for an eight-inch tap/connection for the project. The ALJ found that "[t]he executed documents and supporting written communications undermine any argument that [Franklin] was forced to enter into revised plans and agreements." Instead, the ALJ found, "[p]lainly, [Franklin] made a business decision to move forward with the [p]roject, rather than to incur the economic consequences of the further delay" that would result if it challenged the instructions of the city's fire officials. The ALJ also found that, even when Franklin is given the benefit of the doubt, "there is no proffered testimony that raises anything other than after-the-fact regret for the implications of Summit's requirements on the homeowners."

9

The ALJ rejected Franklin's attempt to introduce ambiguity into the unambiguous terms of the parties' contract through parol evidence. The ALJ found that the contract provides the water service Franklin requested and the municipality required. Given the clear terms of the agreement, the ALJ concluded, Franklin is bound by its provisions, including that NJAW would charge the rates provided in its BPU-approved tariff.

The ALJ noted that N.J.A.C. 14:3-1.3 requires utilities to operate in accordance with their approved tariff "at all times[,]" unless the utility petitions the BPU for approval to depart from the tariff, along with an executed contract, at least thirty days prior to the effective date of the contract. See N.J.A.C. 14:3-1.3(e). The ALJ explained, "NJAW, as a regulated utility, cannot just decide with a developer to vary the terms and conditions of providing water service to a new project" and the BPU cannot approve a departure from a tariff without an application supported by an executed contract. Once a utility and its customer entered into a contract to provide service at the rates in the utility's tariff, the ALJ continued, "[t]he Board, like this forum, cannot make a better agreement for the parties than [the] one they negotiate between themselves." Nor, the ALJ

10

found, "can the properly invoiced tariff charges be retroactively erased as if such an agreement or different connections had already been put in place."[3]

On July 13, 2022, BPU issued a final order adopting the ALJ's decision, denying Franklin's petition with prejudice. BPU found: (1) there were no genuine disputes of material fact between the parties; (2) "NJAW repeatedly informed [Franklin] of the potential impacts of its decision to move forward with its construction plan to install an [eight]-inch service line and meter" and Franklin rejected alternatives to their plans for water service to the project; (3) "[t]he record does not disclose any evidence of fraud in the inducement, misrepresentation, bad faith, or any other valid defense [Franklin] may raise to avoid the consequences of the choice it made to install the [eight]-inch service line and meter, or the bargain it struck with NJAW[;]" (4) Franklin "was advised by the City of Summit that [it] required [Franklin] to install an [eight]-inch service line for fire suppression needs[;]" (5) Franklin "submitted an amended new service application requesting an [eight]-inch service line[;]" and (6) Franklin and NJAW executed a contract that "contained a provision stating that

_____

[3] With respect to the individual meters installed by Franklin, the ALJ noted that the Association and NJAW were free to negotiate an agreement charging the homeowners on an individual basis as gauged by the private meters and submit such an agreement to the BPU for approval for prospective application. There is no indication in the record that NJAW is interested in such an arrangement.

the text of the contract represented the entire agreement of the parties, and that it superseded all prior understandings[,]" precluding consideration of parol evidence. BPU also rejected, for the reasons stated by the ALJ, Franklin's argument that NJAW could use the privately installed meters to charge the individual condominium unit owner for water usage.

This appeal followed. Franklin and the Association argue that genuine disputes of material fact precluded BPU from issuing a decision in the absence of an evidentiary hearing and fact finding. Appellants argue the certifications of Davignon and Szelc submitted to the ALJ raise genuine disputes of material fact because "the vast majority of the discussions between" them "occurred verbally . . . ."[4]

II.

The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v.

---

[4] Although the Association did not participate before the agency, appellants' brief was filed on behalf of both Franklin and the Association.

Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (citing In re Carter, 191 N.J. 474, 482-83 (2007)).]

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007).  We are, however, "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

When reviewing Franklin's arguments, we remain mindful that "[t]he Legislature has endowed the BPU with broad power to regulate public utilities . . . [and] considerable discretion in exercising those powers." In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384-85 (2001) (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449-50 (1987)) (alterations in original).

13

The Board's decisions are presumed to be valid "and will not be disturbed unless [the court] find[s] a lack of 'reasonable support in the evidence.'" Id. at 385 (quoting In re Jersey Cent. Power & Light Co. 85 N.J. 520, 527 (1981)).

The standard for summary decision under N.J.A.C. 1:1-12.5 is "substantially the same as that governing a motion under Rule 4:46-2 for summary judgment in civil litigation." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 203 (2015). That standard requires a determination of "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); N.J.A.C. 1:1-12.5(b).

We have carefully reviewed the record in light of these principles and affirm the BPU's comprehensive and well-written final decision for the reasons stated in the decision. The record contains substantial, credible evidence supporting BPU's conclusion that Franklin executed a contract with NJAW for the installation of an eight-inch main and eight-inch meter to provide water service to the project. The contract unambiguously provides that NJAW would charge rates for water service to the project in accordance with its BPU-approved tariff, the provisions of which were publicly available.

14

Franklin's attempt to circumvent the unambiguous provisions of the contract are barred by the parol evidence rule. When a contract is unambiguous, evidence intended to contradict the clear terms of the agreement is inadmissible. See Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 303 (1953) ("Where the parties have made the writing the sole repository of their bargain, there is the integration which precludes evidence of antecedent understandings and negotiations to vary or contradict the writing."). BPU correctly determined that the certifications submitted by Franklin may not be used as evidence the parties did not intend for the statutorily authorized and agency-approved NJAW tariff to apply to water service provided to the project. We also agree with BPU's conclusion that the record contains no evidence suggesting that fraud or other circumstances warrant departure from the contract or the NJAW tariff. Finally, Franklin and NJAW did not submit for BPU approval an executed contract departing from the NJAW tariff prior to the effective date of the contract, which would be required to obtain BPU approval for NJAW to charge a rate for water service not consistent with its tariff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3971-21